Filed: December 30, 2011

IN THE SUPREME COURT OF THE STATE OF OREGON

A.G.,

Plaintiff-Appellant,
Petitioner on Review,

v.

ROBERT GUITRON,

Defendant-Respondent,

and

AEROBIC AND DANCEWEAR SHOPPE, LLC,
dba Lake Oswego Academy of Dance,

Defendant-Respondents,
Respondent on Review.

(CC 060909578; CA A137591; SC S059166)

En Banc.

On review from the Court of Appeals.*

Argued and submitted September 20, 2011.

Jonathan A. Clark, PC, Stayton, argued the cause and filed the brief for petitioner on review.

Janet M. Schroer, Hoffman Hart & Wagner, Portland, argued the cause for respondent on review Aerobic and Dancewear Shoppe. Matthew J. Kalmanson, Hoffman Hart & Wagner, filed the brief. With him on the brief was Janet M. Schroer.

Charles S. Tauman, Corson & Johnson Law Firm, Eugene, filed a brief for *amicus curiae* Oregon Trial Lawyers Association. With him on the brief was Travis Eiva.

WALTERS, J.

The decision of the Court of Appeals and the judgment of the circuit court are affirmed.

*Appeal from Multnomah County Circuit Court, Adrienne Nelson, Judge. 238 Or App 223, 241 P3d 1188 (2010).

1

WALTERS, J.

In this civil action, we decide that ORCP 44 C required plaintiff to deliver to defendants, at defendants' request, a copy of all written reports of examinations related to the psychological injuries for which plaintiff sought recovery, including, specifically, the report of an examination by a psychologist retained by plaintiff's counsel for the purpose of the litigation. Because defendants requested and plaintiff failed to deliver that report, the trial court entered an order, pursuant to ORCP 44 D, precluding the psychologist from testifying at trial, and defendants ultimately prevailed. The Court of Appeals affirmed the decision of the trial court. *A.G. v. Guitron*, 238 Or App 223, 241 P3d 1188 (2010). We affirm the decision of the Court of Appeals and the judgment of the trial court.

The facts underlying plaintiff's claim for damages are not relevant to the issue of statutory interpretation that we decide, and we need not repeat them in detail here.[1] It is sufficient to explain that plaintiff sought damages for psychological injuries and, before trial, defendants requested that plaintiff produce the following:

"Copies of any and all detailed written narrative reports of all treatments

---

[1] Plaintiff alleged that she was sexually abused by her dance instructor (Guitron) at Lake Oswego Academy of Dance (Academy) when she was 14 and 15 years of age. Plaintiff raised three claims: sexual battery, intentional infliction of emotional distress, and negligence (against defendant Academy only). One of the issues in the case was whether plaintiff's claims were barred by the statute of limitations. Resolution of that issue depended on when plaintiff had discovered or should have discovered the alleged abuse or the damages caused by the alleged abuse.

2

and examinations of the Plaintiff which have been conducted by any healthcare professional setting forth the examiner's findings, including results of all tests made, diagnoses, and conclusions, together with like reports of all earlier treatments and examinations for the same condition which relate to the Plaintiff's claimed injuries. This is a continuing request."

Plaintiff produced the reports of her treating psychologist, Dr. Puma, but did not produce the reports of Dr. Green, a psychologist whom plaintiff's counsel had retained for purposes of the litigation.

At trial, plaintiff called Green to testify. Defendants objected on the grounds that Green had conducted an examination of plaintiff and that plaintiff had failed to provide the reports of that examination. As a result, defendants argued, plaintiff should not be permitted to call Green as a witness. Plaintiff responded that Green's report was not discoverable because he was an expert witness retained for the purpose of litigation, and the Oregon Rules of Civil Procedure do not require disclosure of the reports of such experts. Plaintiff argued that defendants could have retained their own expert to examine plaintiff, but had not done so.

The trial court agreed with defendants and excluded Green's testimony.[2] The court then entered a directed verdict in favor of one of the defendants, and the jury

---

[2] Green testified through an offer of proof made outside the presence of the jury. Green opined that plaintiff "has many of the characteristics consistent with someone who has been sexually abused" and that he did not believe that plaintiff had discovered the connection between the abuse or the damages it had caused until she entered treatment in February 2004.

3

returned a verdict in the other defendant's favor.[3] After entry of judgment for defendants, plaintiff appealed.[4] The Court of Appeals affirmed, and we allowed plaintiff's petition for review.

As noted, the question presented in this court is one of statutory interpretation -- specifically, whether ORCP 44 C required plaintiff to produce the report of an expert who examined plaintiff for purposes of litigation and not for purposes of treatment. ORCP 44 C provides:

"In a civil action where a claim is made for damages for injuries to the party * * *, upon the request of the party against whom the claim is pending, the claimant shall deliver to the requesting party a copy of all written reports and existing notations of any examinations relating to injuries for which recovery is sought unless the claimant shows inability to

---

[3] At the close of plaintiff's case, both defendants moved for directed verdicts. The trial court directed a verdict in favor of defendant Academy because plaintiff had not presented any evidence that defendant Academy knew of the sexual abuse. The trial court allowed the claims against defendant Guitron to proceed to the jury. The jury returned a verdict in favor of defendant Guitron. In response to the first question on the verdict form -- "Did plaintiff * * * discover the connection between the abuse and her injuries after September 12, 2003?" -- the jury answered "[y]es." In response to the second and third questions, whether Guitron engaged in conduct constituting a sexual battery or intentional infliction of emotional distress, the jury answered "[n]o" and awarded no damages.

[4] On appeal to the Court of Appeals, plaintiff raised two assignments of error. First, plaintiff assigned error to the trial court's grant of a directed verdict in favor of defendant Academy. Second, plaintiff assigned error to the trial court's exclusion of Green's testimony. The Court of Appeals concluded that the trial court did not err in excluding Green's testimony, and, in light of its resolution of that issue and the jury verdict in favor of defendant Guitron, the court also concluded that, if there was any error in directing a verdict for defendant Academy, that error was harmless. On review in this court, plaintiff does not ask that we review the Court of Appeals decision on defendant Academy's motion for directed verdict.

4

comply."

The text of ORCP 44 C supports the decision of the trial court. ORCP 44 C required plaintiff, the party making a claim for injuries, to deliver to defendants, the party against whom the claim was pending, at defendants' request, a copy of "all written reports" of "any examinations" relating to plaintiff's injuries.[5] Defendants requested that plaintiff produce all reports of "examinations for the same condition which relate to the Plaintiff's claimed injuries." Green had examined plaintiff, and that examination was related to her claimed injuries. Plaintiff failed to provide Green's written reports to defendants, and, under the plain terms of ORCP 44 D(2), the trial court had authority to exclude Green's testimony.[6]

Plaintiff argues, however, that ORCP 44 C cannot be read in isolation. Read in context, plaintiff argues, ORCP 44 C governs only the reports of experts who examine and treat a plaintiff (treating experts). It is ORCP 44 B, plaintiff asserts, that

---

[5]     Although either party may seek and obtain the examination of the other party, the party seeking the examination will ordinarily be the defendant, and the party who makes a claim for injuries and who will be subjected to the examination will ordinarily be the plaintiff. For simplicity, we will refer to those parties, respectively, by those terms -- defendant and plaintiff.

[6]     ORCP 44 D(2) provides:

"If a party fails to comply with sections B and C of this rule, or if a physician or psychologist fails or refuses to make a detailed report within a reasonable time, or if a party fails to request that the examining physician or psychologist prepare a written report within a reasonable time, the court may require the physician or psychologist to appear for a deposition or may exclude the physician's or psychologist's testimony if offered at the trial."

addresses production of the reports of experts who examine claimants for the purpose of litigation (litigation experts). ORCP 44 B provides:

> "If requested by the party against whom an order is made under section A of this rule or the person examined, the party causing the examination to be made shall deliver to the requesting person or party a copy of a detailed report of the examining physician or psychologist setting out such physician's or psychologist's findings, including results of all tests made, diagnoses and conclusions, together with like reports of all earlier examinations of the same condition. After delivery the party causing the examination shall be entitled upon request to receive from the party against whom the order is made a like report of any examination, previously or thereafter made, of the same condition, * * *. This section applies to examinations made by agreement of the parties, unless the agreement expressly provides otherwise."

Under ORCP 44 B, a defendant who has a plaintiff examined by a litigation expert must provide the plaintiff with a copy of that expert's report. After delivery, the defendant has the right to request and receive "like" reports from the plaintiff, *i.e.*, reports of the plaintiff's litigation experts. ORCP 44 C, plaintiff contends, is intended to address a different subject -- production of the reports of *treating* experts. According to plaintiff, ORCP 44 C requires a plaintiff to disclose the reports of his or her treating experts without regard to whether a defendant has had or will have the plaintiff examined by the defendant's own litigation experts. If ORCP 44 C were to also require a plaintiff to produce the reports of his or her litigation experts, plaintiff asserts, it would be redundant of ORCP 44 B and inconsistent with that section's more particular exchange requirements.

As further context for that interpretation of ORCP 44 C, *amicus curiae* Oregon Trial Lawyers Association points to the fact that, in the absence of specific

6

authorization, the Oregon Rules of Civil Procedure do not permit expert discovery. *See Stevens v. Czerniak,* 336 Or 392, 404, 84 P3d 140 (2004) (so stating). In deciding whether such authority exists, *amicus* argues, this court should be cognizant that the physician-patient, psychologist-patient, and attorney-client privileges protect the confidentiality of expert communications. *Amicus* urges that we consult the legislative history of ORCP 44 and its predecessor, *former* ORS 44.620 (1974), *repealed by* Or Laws 1979, ch 284, § 199, contending that that history establishes that the legislature intended to limit the reach of ORCP 44 C to the reports of treating experts.

ORCP 44 C is a rule "to which we apply the usual method of statutory interpretation." *Pamplin v. Victoria*, 319 Or 429, 433, 877 P2d 1196 (1994). Plaintiff and *amicus* are therefore correct that, to determine its meaning, we look to its context as well as its text, and that, to the extent we deem appropriate, we may also consider legislative history. *See State v. Gaines*, 346 Or 160, 171-72, 206 P3d 1042 (2009); *PGE v. Bureau of Labor and Industries*, 317 Or 606, 610, 859 P2d 1143 (1993) (explaining statutory interpretation methodology). Existing case law forms a part of a statute's context, *SAIF v. Walker*, 330 Or 102, 108-09, 996 P2d 979 (2000), and we begin our analysis with a review of the law as it existed in 1973 when the legislature enacted the predecessors to ORCP 44, *former* ORS 44.610 through 44.640 (1974), *repealed by* Or Laws 1979, ch 284, § 199.

At that time, this court had decided that a defendant in a personal injury action could request, and a trial court had "inherent general power" to order, that the plaintiff submit to a physical examination by medical experts selected by the defendant or

7

designated by the court. *Carnine v. Tibbets*, 158 Or 21, 27, 74 P2d 974 (1937). In reaching that conclusion, the court rejected the minority view. *Id*. at 31. That view was described and rejected in a Washington case that this court cited with approval. *Id*. at 28-29. In *Lane v. Spokane Falls & N. Ry. Co.*, 21 Wash 119, 121, 57 P 367, 367 (1899), the Washington court summarized the minority view that

> "it is abhorrent to the principles of liberty to compel a party to submit to such an examination; that it invades the inviolability of the person, is an indignity involving an assault and a trespass, and an impertinence to which a modest woman would not consent."

Instead, this court agreed with the majority view identified by the Washington court. *Carnine*, 158 Or at 29-31. In *Lane*, the Washington court explained that "[c]ourts should not sacrifice justice to notions of delicacy, and knowledge of the truth is essential to justice." *Lane*, 21 Wash at 121, 57 P at 367.[7]

---

[7] This court also expressly rejected the view that the plaintiff's gender was a justification for denying the defendants' motion for an examination. The court quoted the following:

> "'As already shown, where the inherent power of a court to order a physical examination of a party is recognized, no exception is made in favor of women. And in statutes conferring the power women are not exempted. As against the contention that a physical examination is an impertinence to which a modest woman would not consent, it has been observed that the demands of justice not infrequently occasion private inconvenience and annoyance, and that a witness is frequently required to answer questions which shock modesty and offend the sense of delicacy; and that if she has submitted to an examination by her own physicians, even of organs peculiar to female functions, it is no greater indignity to be examined by other doctors. A woman's delicacy and refinement of feeling, though of course entitling her to the most considerate and tender treatment consistent with the rights of others, cannot be permitted to stand between

8

As of 1973, this court also had decided that a plaintiff could obtain a copy of the report of the defendant's examining expert. *Nielson v. Brown*, 232 Or 426, 374 P2d 896 (1962). In *Nielson,* the court considered whether the plaintiff could call, as a witness in her case, a physician who had been retained by defense counsel to examine the plaintiff. The defendant objected to the physician's testimony on the ground that it was confidential under the attorney-client privilege and was part of defense counsel's "work product." The court answered the former argument by pointing out that there was no attorney-client relationship between plaintiff and defense counsel. Whatever communication the plaintiff had with the physician retained by defense counsel was not confidential communication between the plaintiff and her lawyer, and, thus, was not protected by the attorney-client privilege.

The court responded to the defendant's argument that it would be unfair to permit the plaintiff to benefit from the "work product" for which the defendant had paid by observing that there would be a competing unfairness in suppressing the evidence that the plaintiff had supplied by submitting to the defense examination. "On balance," the court said, "we think that the problem should be resolved by letting the evidence in, no matter at whose instance or whom it hurts, as an aid in the 'search for truth and justice.'" *Id.* at 444 (quoting *Oregon v. Cahill*, 208 Or 538, 582, 293 P2d 169, 298 P2d 214, *cert*

---

the defendant and a legitimate defense against her claim of a considerable sum of money.'"

158 Or at 33 (quoting 14 R.C.L., Inspection and Physical Examinations § 17 (1916)).

*den*, 352 US 895 (1956)).  The court also noted that it was the practice in some Oregon counties for trial courts to order that defendants provide a copy of the report of the examination to plaintiffs, "as the [f]ederal rules require."  The court concluded that there was no reason that such orders should not be issued.  *Id.* at 443.

Under the federal rules to which the court referred in *Nielson*, a defendant could obtain an examination of the plaintiff and, on request, was required to deliver a copy of a report of that examination to the plaintiff.  After delivering the report, the defendant could request, and was entitled to receive, a copy of "a like report" from the plaintiff.  *Former* FRCP 35(b)(1) (1937).[8]

---

[8]     At the time *Nielson* was decided, FRCP 35 provided:

"(a) Order for Examination.  In an action in which the mental or physical condition of a party is in controversy, the court in which the action is pending may order him to submit to a physical or mental examination by a physician.  The order may be made only on motion for good cause shown and upon notice to the party to be examined and to all other parties and shall specify the time, place, manner, conditions, and scope of the examination and the person or persons to whom it is to be made.

"(b) Report of Findings.

"(1) If requested by the person examined, the party causing the examination to be made shall deliver to him a copy of a detailed written report of the examining physician setting out his findings and conclusions.  After such request and delivery the party causing the examination to be made shall be entitled upon request to receive from the party examined a like report of any examination, previously or thereafter made, of the same mental or physical condition.  If the party examined refuses to deliver such report the court on motion and notice may make an order requiring delivery on such terms as are just, and if a physician fails or refuses to make such report the court may exclude his testimony if offered at the trial.

In 1973, the Oregon State Bar (Bar) drafted House Bill (HB) 2101 (1973), which the legislature passed without amendment and which provided:

"Section 1. In a civil action where a claim is made for damages for injuries to the party or to a person in the custody or under the legal control of a party, the court in which the action is pending may order the person claiming to be injured to submit to a physical or mental examination by a physician employed by the moving party. The order may be made only on motion for good cause shown and upon notice to the persons to be examined and to all parties. The motion and order shall specify the time, place, manner, conditions, and scope of the examination and the person or persons by whom it is to be made.

"Section 2. Upon the request of any party the party causing the examination to be made shall deliver to him a copy of a detailed written report of the examining physician setting out his finding, including results of all tests made, diagnoses and conclusions, together with like reports of all earlier examinations of the same condition.

"Section 3. Upon the request of the party against whom the claim is pending the claimant shall deliver to him a copy of all written reports of any examinations relating to injuries for which recovery is sought unless the claimant shows that he is unable to comply."

Or Laws 1973, ch 136, §§ 1 - 3. In 1974, section 1 was codified as ORS 44.610, and sections 2 and 3 were codified as ORS 44.620(1) and (2), respectively.

---

"(2) By requesting and obtaining a report of the examination so ordered or by taking the deposition of the examiner, the party examined waives any privilege he may have in that action or any other involving the same controversy, regarding the testimony of every other person who has examined or may thereafter examine him in respect of the same mental or physical condition."

*Former* FRCP 35 (1937).

Sections 1 and 2 reflected the court's rulings in *Carnine* and *Nielson* and addressed only the rights and duties of a party who seeks and obtains an examination of another party. Section 1 permitted a defendant to obtain an examination of a plaintiff, and section 2 required the defendant to deliver a copy of the examining physician's report and "like reports of all earlier examinations of the same condition" to the plaintiff. Unlike the federal rule,[9] section 2 did not provide that, after delivering those reports, the

[9] When the Oregon statutes at issue here were enacted in 1973, FRCP 35 provided:

"(a) When the mental or physical condition (including the blood group) of a party, or of a person in the custody or under the legal control of a party, is in controversy, the court in which the action is pending may order the party to submit to a physical or mental examination by a physician or to produce for examination the person in his custody or legal control. The order may be made only on motion for good cause shown and upon notice to the person to be examined and to all parties and shall specify the time, place, manner, conditions, and scope of the examination and the person or persons by whom it is to be made.

"(b)(1) If requested by the party against whom an order is made under Rule 35(a) or the person examined, the party causing the examination to be made shall deliver to him a copy of a detailed written report of the examining physician setting out his findings, including results of all tests made, diagnoses and conclusions, together with like reports of all earlier examinations of the same condition. After delivery the party causing the examination shall be entitled upon request to receive from the party against whom the order is made a like report of any examination, previously or thereafter made, of the same condition, unless, in the case of a report of examination of a person not a party, the party shows that he is unable to obtain it. The court on motion may make an order against a party requiring delivery of a report on such terms as are just, and if a physician fails or refuses to make a report the court may exclude his testimony if offered at trial.

"(2) By requesting and obtaining a report of the examination so

12

defendant had the right to request and receive from the plaintiff "*a like report* of any examination, previously or thereafter made, of the same condition[.]"  (Emphasis added.) *See former* FRCP 35(b)(1).  Instead, section 3 provided that, at the request of a defendant, the plaintiff must deliver to the defendant copies of "*all written reports* of any examinations relating to injuries for which recovery is sought."  (Emphasis added.)

Two representatives of the Bar, Austin Crowe and David Landis, testified in favor of HB 2101.  Their testimony, *amicus* argues, demonstrates that the legislature intended section 3 to require plaintiffs to produce only the reports of treating experts.

At the February 12, 1973, meeting of the House Judiciary Subcommittee, Crowe and Landis explained that they had drafted sections 1 and 2 of the bill to codify

ordered or by taking the deposition of the examiner, the party examined waives any privilege he may have in that action or any other involving the same controversy, regarding the testimony of every other person who has examined or may thereafter examine him in respect of the same mental or physical condition.

"(3) This subdivision applies to examinations made by agreement of the parties, unless the agreement expressly provides otherwise.  This subdivision does not preclude discovery of a report of an examining physician or the taking of a deposition of the physician in accordance with the provisions of any other rule."

The current version of FRCP 35 contains a similar exchange provision. FRCP 35(b)(3) provides:

"Request by the Moving Party. After delivering the reports, the party who moved for the examination may request -- and is entitled to receive -- from the party against whom the examination order was issued like reports of all earlier or later examinations of the same condition. But those reports need not be delivered by the party with custody or control of the person examined if the party shows that it could not obtain them."

13

existing case law. As recorded in the minutes of the meeting, Crowe identified section 3's purpose as follows:

> "[T]his bill is designed to correct a situation which has existed in this state for several years; namely, that medical reports of the *private treating physician* of an injured person filing a lawsuit are not subject to being produced by the plaintiff, whereas if defendant orders an independent medical examination of plaintiff, such a report is required to be produced."

Minutes, House Judiciary Subcommittee II, HB 2101, Feb 12, 1973, 1 (statement of Austin Crowe) (emphasis added). However, the tape recording of the meeting reveals Crowe as having used the term "doctors," not "private treating physician." Tape Recording, House Judiciary Subcommittee II, HB 2101, Feb 12, 1973, Tape 6, side 1 (statement of Austin Crowe).

Crowe then stated, according to the minutes and the tape recording, that "it has been decided by both the plaintiffs' and defense bar in Oregon that it would be more fair and appropriate if there were an *exchange between the parties of any doctor's report dealing with a specific action or suit*." Minutes, House Judiciary Subcommittee II, HB 2101, Feb 12, 1973, 1 (statement of Austin Crowe) (emphasis added); Tape Recording, House Judiciary Subcommittee II, HB 2101, Feb 12, 1973, Tape 6, side 1 (statement of Austin Crowe). He explained that such an exchange would promote settlement and reduce the costs of litigation.

Landis related a particular incident that had occurred in a case that he had

14

tried.[10]  Landis said that he had requested a *treating* physician's report from plaintiff and that the plaintiff's attorney had declined, stating that he "preferred the sporting theory of justice."  Minutes, House Judiciary Subcommittee II, HB 2101, Feb 12, 1973, 3 (statement of David Landis).  The court had then denied Landis's motion seeking to compel discovery of that report, and Landis testified that, under current law, a plaintiff could "thumb his nose at us."  Tape Recording, House Judiciary Subcommittee II, HB 2101, Feb 12, 1973, Tape 6, side 1 (statement of David Landis).

When the Senate Judiciary Committee heard the bill, Crowe and Landis again testified.  At a hearing on May 2, 1973, Crowe explained that, "[u]nder the present status of the law, a person who brings a personal injury case does not have to divulge any of the information concerning the nature of the claim until such a time as she or he gets on the witness stand."  Minutes, Senate Judiciary Committee, HB 2101, May 2, 1973, 4 (statement of Austin Crowe).  Crowe testified that the Bar had drafted the bill to promote settlements and eliminate unnecessary medical examinations.  The Bar had incorporated existing law and provided "some additional tools so the medical reports will come out in the beginning and at the start of a lawsuit, everyone will find out what the nature of your claim is."  *Id*.  The act, Crowe said, "intends to make the report of the *treating physician* available to the defense lawyer in the case."  *Id*. (emphasis added).

In his testimony, Landis reiterated that sections 1 and 2 of HB 2101 would

---

[10]    Landis provided the legislative committees with the motion and memorandum that he had filed in that case.

15

codify existing case law and that section 3 was a new provision. Landis further testified that the bill would help to alleviate the "inequities in the exchange of material between the lawyers before a trial." Section 3 would require the plaintiff's attorney to forward "copies of [his or her] reports" to the defense attorney. Minutes, Senate Judiciary Committee, HB 2101, May 2, 1973, 5 (statement of David Landis).

In hearings before both committees, Landis answered questions from legislators. One question from Representative Stults was whether section 3 contemplated "that monthly forms filled out [by] a doctor regarding the continuation of a disability would be included[.]" Landis replied that he "doubted whether it would include those monthly check-off forms saying a claimant was still unable to return to work, but that *the examination report of the injured worker* would be subject to discovery." Minutes, House Judiciary Subcommittee II, HB 2101, Feb 12, 1973, 3 (statement of David Landis) (emphasis added).

In response to a question from another legislator, Landis said that sections 2 and 3 did not require delivery of reports until after a lawsuit had been filed, but that "[t]here is no timing provision that the plaintiff can wait on the independent examination until he has to deliver copies of the report. Then you get into playing games if you are going to have an independent medical examination." Minutes, Senate Judiciary Committee, HB 2101, May 2, 1973, 5 (statement of David Landis). Landis also explained the difference between sections 2 and 3 by saying that the intent of section 2 was to give the report of the examination to the plaintiff's attorney, if the examination was done at the defendant's request. In that instance, Landis said, the defendant could go

16

to court and get a similar report from the plaintiff under section 3, but a defendant also could get the report from the plaintiff under section 3, notwithstanding sections 1 and 2. Tape Recording, Senate Judiciary Committee, HB 2101, May 2, 1973, Tape 28, side 2 (statement of David Landis).

That testimony demonstrates that the drafters of HB 2101 contemplated that, on request, at any time after initiation of an action for personal injuries, a plaintiff would be required to produce the reports of his or her treating experts. The drafters anticipated that early disclosure of such reports could eliminate the need for a defense examination, promote settlement, and reduce costs. Whether the drafters, and, more importantly, the legislature, intended to limit the bill's disclosure requirements to that circumstance is, however, far less clear. We therefore consult the legislature's later discussion and amendment of those statutes for assistance.

In 1978, the Council on Court Procedures (Council) promulgated the Oregon Rules of Civil Procedure. Under ORS 1.735, those rules became effective on January 1 of the following year unless the legislature amended, repealed, or supplemented them. One of the rules that the Council promulgated in 1978 was ORCP 44. The legislature made certain amendments to that rule,[11] none of which are pertinent

---

[11] The legislature amended ORCP 44 A to add "agent[s]," "employee[s]," and "spouse[s]" to the list of individuals who may be subject to an examination under the rule. The legislature amended the portion of ORCP 44 A permitting an examination when the "blood group" of such an individual is in controversy, to permit an examination when "the blood relationship" is in controversy. Or Laws 1979, ch 284, § 27. The legislature also amended ORCP 44 E, providing for access to hospital records, to clarify

17

here, and the rule, as amended, became effective on January 1, 1979. ORS 1.735. When the Council promulgated ORCP 44, the new rule included the substance and much of the text of ORS 44.610 and ORS 44.620. The legislature therefore repealed those statutes. Or Laws 1979, ch 284, § 199.

To interpret ORCP 44, we look to the text and context of the rule and the Council's intent. *Waddill v. Anchor Hocking, Inc.*, 330 Or 376, 382 n 2, 8 P3d 200 (2000), *adh'd to on recons*, 331 Or 595, 18 P3d 1096 (2001) ("unless the legislature amended the rule at issue in a particular case in a manner that affects the issues in that case, the Council's intent governs the interpretation of the rule"). *See also Lake Oswego Review v. Steinkamp*, 298 Or 607, 610-12, 695 P2d 565 (1985) (referring to Council's legislative history to interpret rule).

Through ORCP 44 A, the Council extended the applicability of *former* ORS 44.610 beyond personal injury actions. ORCP 44 A mirrored *former* FRCP 35(a) and permitted a court to order the examination of a party in any case in which a "mental or physical condition * * * is in controversy."[12]

---

the scope of that provision and to provide for notice to the party whose records are sought. Or Laws 1979, ch 284, § 28.

[12] As promulgated in 1979, ORCP 44 A provided:

"When the mental or physical condition or the blood relationship of a party, or of an agent, employee, or person in the custody or under the legal control of a party (including the spouse of a party in an action to recover for injury to the spouse), is in controversy, the court may order the party to submit to a physical or mental examination by a physician or to

18

In ORCP 44 B, the Council added the report exchange provisions of *former* FRCP 35(b)(1) to *former* ORS 44.620(1).  ORCP 44 B provided:

> "If requested by the party against whom an order is made under section A of this rule or the person examined, the party causing the examination to be made shall deliver to the requesting person or party a copy of a detailed report of the examining physician setting out such physician's findings, including results of all tests made, diagnoses and conclusions, together with like reports of all earlier examinations of the same condition.  After delivery the party causing the examination shall be entitled upon request to receive from the party against whom the order is made a like report of any examination, previously or thereafter made, of the same condition, unless, in the case of a report of examination of a person not a party, the party shows inability to obtain it.  This section applies to examinations made by agreement of the parties unless the agreement expressly provides otherwise."

In the commentary to the first draft of ORCP 44, included in the Council's "Legislative History,"[13] the Council explained that

> "ORS 44.620(1) provides for a delivery of a copy of a report on request of the examined party when the examination is pursuant to a court order, and ORS 44.620(2) * * * provides for delivery of the claimant's reports but not related to any request for defendant's reports or even a court-ordered examination."

produce for examination the person in such party's custody or legal control. The order may be made only on motion for good cause shown and upon notice to the person to be examined and to all parties and shall specify the time, place, manner, conditions, and scope of the examination and the person or persons by whom it is to be made."

[13] The Council on Court Procedures published bound volumes entitled Legislative History Relating to the Promulgation of the Oregon Rules of Civil Procedure (1979).  Those volumes include, *inter alia*, meeting minutes, committee reports and internal memoranda, draft rules and commentary, and the final draft rules.  We use this legislative history as we would use comparable history from the Oregon Legislature.  *See Lake Oswego Review*, 298 Or at 610-12 (using Council's legislative history to interpret rule).

Comment, Discovery Committee Draft Rules, Council on Court Procedures, Mar 27, 1978, 57.[14] In contrast, the comment stated, the new rule imposes the exchange procedure found in the federal rule such that "[i]f no request for a report is made by the examined party, no right to reports from the examined party arises for the examining party." *Id.* In choosing to adopt that federal procedure, the Council's stated aim was to "choose the best rule, with some deference to recent legislative enactment." Introduction, Discovery Committee Draft Rules, Council on Court Procedures, Mar 27, 1978, 1.

Finally, in ORCP 44 C, the Council retained the text of *former* ORS 44.620(2). ORCP 44 C provided:

> "In a civil action where a claim is made for damages for injuries to the party or to a person in the custody or under the legal control of a party, upon the request of the party against whom the claim is pending, the claimant shall deliver to the requesting party a copy of all written reports of

---

[14] The commentary to the final draft rules is consistent with, albeit less detailed than, the Discovery Committee's commentary. It provides:

> "This rule is a combination of ORS sections and Federal Rule 35. Section 44 A comes from the federal rule and extends the possibility of a medical examination from personal injury cases to any situation where the mental and physical condition of a party is at issue. * * *

> "Section 44 B is also adapted from the federal rule. It provides for a more complete exchange of reports than that contemplated by the existing ORS sections. In one respect the rule is narrower than existing practice; it only allows the examined party to secure a copy of the report, as opposed to any party.

> "Section 44 C is based on ORS 44.620(2)."

Comment to Rule 44, Final Draft, Proposed Oregon Rules of Civil Procedure, Council on Court Procedures, Nov 24, 1978, at 129-30.

any examinations relating to injuries for which recovery is sought unless the claimant shows inability to comply."

The Council's commentary explained that ORCP 44 C was taken from ORS 44.620(2) and did not exist in the federal rule. It was "expressly designed to create a duty on the part of plaintiffs in personal injury cases to furnish medical reports *apart from any exchange with the defendant or any court-ordered examination*." Comment, Discovery Committee Draft Rules, Council on Court Procedures, Mar 27, 1978, 58 (emphasis added). The Council's commentary quoted an earlier comment by the Practice and Procedure Committee of the Bar to the 1973 bill, HB 2101, that is not included in the legislative history of that bill. That comment included the statement that "[t]he purpose of this bill is to require plaintiff to produce copies of the medical reports of his *treating physician*." *Id*. (emphasis added).

While the Council was considering ORCP 44, it also was considering a rule that would have permitted much broader discovery of expert reports. That rule, designated as draft rule 36 B(4), and referred to as the Bodyfelt rule, would have required the mandatory exchange of all expert reports, "somewhat equivalent to the existing provisions following a physical examination of an opponent." Fredric Merrill, Memorandum on the Discovery of Experts 1, Council on Court Procedures (1978). In discussing the overlap between draft rule 36 and ORS 44.620, Professor Merrill said:

> "The rule [draft rule 36] is not clear what happens in situations where there is a medical examination of an opponent, presently covered by ORS 44.620-630. The report specified under those statutes appears to be more detailed and *also there is a specific provision dealing with the medical reports of the experts of the claiming party whether or not the claiming party plans to call these doctors as witnesses.* It is suggested that

21

the Bodyfelt rule, if used, be specifically made subject to whatever rule is adopted that is the equivalent of ORS 44.620 to ORS 44.640."

*Id*. at 18 (emphasis added). Draft rule ORCP 36 B(4) was controversial, and the legislature declined to adopt it. *See Stevens v. Czerniak*, 336 Or 392, 403-04, 84 P3d 140 (2004) (discussing legislative history of ORCP 36 B(4)). Since 1979, the legislature has made some minor changes to ORCP 44, but has not further discussed the purpose or effect of its provisions.[15]

The history that we have laid out is not definitive on the issue before us, but it is informative. First, that history reveals that, when the Oregon Legislature rejected a broad expert discovery rule in 1978, it had already decided, in 1973, to permit limited discovery of the reports of examining experts. The fact that the legislature declined to expand the discovery permitted by *former* ORS 44.610 and ORS 44.620 to permit discovery of all expert reports does not assist us in determining the meaning of those existing statutes and their successor, ORCP 44 C. However, it is important to recognize and emphasize that *former* ORS 44.610 and ORS 44.620 permitted discovery of the reports of a narrow class of experts -- those who examine claimants.

Second, the legislative history that we have reviewed reveals that the redundancy that plaintiff finds in ORCP 44 B and C, and that is the lynchpin of her

---

[15]    In 1986, the legislature amended ORCP 44 C to require that a plaintiff produce "all written reports *or existing notations* of any examinations relating to injuries for which recovery is sought." *Former* ORCP 44 C (1987). In 1988, the legislature substituted "and existing notations" for "or existing notations." ORCP 44 C.

22

argument that we must construe ORCP 44 C to be limited to reports of treating experts, did not exist in *former* ORS 44.620. *Former* ORS 44.620(1) required a defendant to produce the reports of his or her litigation experts, but did not require plaintiffs to produce "like" reports. Thus, there could be no argument that, if *former* ORS 44.620(2) required a plaintiff to produce the reports of his or her litigation experts, it was duplicative of *former* ORS 44.620(1). Unless *former* ORS 44.620(2) required a plaintiff to produce the reports of his or her litigation experts, the plaintiff could obtain the reports of the defendant's litigation experts under *former* ORS 44.020(1), but refuse to disclose his or her own "like" reports.

The legislative history of *former* ORS 44.620 does not demonstrate an intent to require such an unequal exchange. In fact, Landis, one of the drafters of that statute, considered the existing case law -- requiring defendants and not plaintiffs to produce the reports of their examining experts -- to be objectionable and informed the legislature of his objection. In this case, plaintiff concedes that the legislature intended to address that problem, but argues that it did so by requiring only that plaintiffs produce the reports of their treating experts. However, there is little evidence that the legislature intended a limited rather than a more complete remedy to the expressed problem. Although both Landis and Crowe referred to a plaintiff's duty to produce the reports of treating experts, Landis also told legislators that the bill permitted defendants to obtain reports from plaintiffs that were "similar" to the reports that defendants were required to provide, and defendants were required to provide the reports of their litigation experts. Both Crowe and Landis generally referred to an "exchange" of reports and emphasized

23

their interest in moving away from the "sporting theory of justice" and the gamesmanship that existing law permitted, and toward early disclosure of all relevant facts.

When the Council promulgated ORCP 44 some five years later, it stated, in the commentary to ORCP 44 B, that, "[i]f no request for a report is made by the examined party, no right to reports from the examined party arises for the examining party." However, the Council also stated, in the commentary to ORCP 44 C, that that rule required plaintiffs to produce reports of examinations "apart from any exchange with the defendant or any court-ordered examination." That commentary is consistent with an intent to adopt, in ORCP 44 B, the specific exchange procedure of *former* FRCP 35(b)(1), but does not establish that the Council intended to restrict discovery of the reports of litigation experts to that procedure. The Council retained the wording of ORS 44.620 in ORCP 44 C, and there is a good argument that the text of ORS 44.620 required plaintiffs to produce, on request, the reports of all examining experts, including litigation experts.

Although plaintiff has raised a substantial question about the meaning of ORCP 44 C, the contextual clues and history that she has provided and that we have reviewed are not convincing, particularly given the text of the rule which, on its face, is unambiguous. ORS 44.620(2) required, and ORCP 44 C requires, plaintiffs to produce copies of "all written reports * * * of any examinations" relating to the injuries that plaintiffs' claim. The words of statutes and rules of civil procedure are the best indication of the intent of those who promulgate them. *See State v. Gaines*, 346 Or 160, 171, 206 P3d 1042 (2009) (words used by legislature to give expression are best evidence of

24

intent). Here, those words are encompassing rather than limiting. The words "all written reports * * * of any examinations" encompass the reports of both litigation and treating experts who examine a plaintiff. Those words do not define or limit the experts whose reports are subject to discovery, as long as those experts have examined the plaintiff.

Plaintiff in this case may well be correct that that interpretation of ORCP 44 C requires plaintiffs to disclose reports of litigation experts that, in the absence of ORCP 44 C, would be protected by the physician-patient, psychotherapist-patient, or attorney-client privileges. The response to that argument is that the legislature created those privileges and, in adopting ORCP 44, limited their reach. Plaintiff agrees that ORCP 44 B requires that the parties exchange the reports of their litigation experts and thereby requires the production of reports that otherwise might have been considered confidential. There is no reason that ORCP 44 C should not have the same effect. In fact, HB 2101 included an amendment of the physician-patient privilege that made that privilege "subject to" the provisions of that act. Or Laws 1973, ch 136, § 6. Crowe told the legislature that he had obtained the "full approval" of the Oregon Medical Society for that change. Minutes, House Judiciary Subcommittee II, Feb 12, 1973 (statement of Austin Crowe). OEC 504 and OEC 504-1 also provide that there is no psychotherapist-patient or physician-patient privilege for communications in the course of an ORCP 44 examination, except as provided in ORCP 44 and OEC 503. The lawyer-client privilege defines "representative of the lawyer" to exclude a physician making a physical or mental

25

examination under ORCP 44.[16] The legislature has recognized that the discovery that ORCP 44 permits and requires is an exception to the privileges that the legislature has created.

We conclude that, in adopting ORCP 44 C, the legislature, as did this court in *Carnine* and *Nielson*, considered the "search for truth and justice" to be paramount and required plaintiffs to produce, on request, the reports of the experts who examine them for purposes of litigation as well as for treatment. Therefore, we also conclude that, in this case, the trial court was correct that plaintiff was required to produce the report of Green, and did not err by excluding his testimony under ORCP 44 D.

The decision of the Court of Appeals and the judgment of the circuit court are affirmed.

---

[16] Or Laws 1973, ch 136, § 6, provided that the physician-patient privilege of *former* ORS 44.040(1)(d) (1974), *repealed by* Or Laws 1981, ch 829, § 98, was subject to the provisions of HB 2101. When the legislature enacted the Oregon Evidence Code, it repealed *former* ORS 44.040 and replaced it with the cited provisions of the Oregon Evidence Code. As originally enacted, and today, OEC 503, OEC 504, and OEC 504-1 contain express exemptions for examinations conducted under ORCP 44.