Argued and submitted January 11, affirmed July 25, 2012

In the Matter of
D. M., M. M., K. M., and D. M., Children.
DEPARTMENT OF HUMAN SERVICES,
*Petitioner-Appellant,*

*v.*

M. R.
and E. M.,
*Respondents.*

Multnomah County Circuit Court
2006806982, 2006806983, 2006806984, 2006806985;
Petition Number 108263M;
A149109

283 P3d 952

Cecil A. Reniche-Smith, Assistant Attorney General, argued the cause for appellant. On the brief were John R. Kroger, Attorney General, Anna M. Joyce, Solicitor General, and Laura S. Anderson, Senior Assistant Attorney General.

Angela Sherbo argued the cause and filed the brief for respondent M. R.

No appearance for respondent E. M.

Before Ortega, Presiding Judge, and Brewer, Judge, and Sercombe, Judge.

BREWER, J.

**BREWER, J.**

The Department of Human Services (DHS) appeals from an order of the juvenile court that denied its motion to unseal mother's DHS records in a previous juvenile dependency case in which mother was a dependent child. Because we conclude that the court did not in fact seal those records, we find no error in its denial of the state's motion, and affirm.

When mother was a minor, she was a dependent child within the jurisdiction of the Multnomah County Juvenile Court. In July 2006, mother made admissions in a juvenile court dependency proceeding in the same court involving mother's eldest child. In the ensuing judgment, the court ordered that "reports and other material relating to mother's 'history and prognosis' contained in mother's dependency file are privileged and as such shall be removed from any file in this her child's dependency and any reference to that material shall be redacted from social file in this case." On September 25, 2010, DHS received a report of possible child abuse or neglect regarding mother's second eldest child, D. M., who had sustained a burn on her arm. The child was seen at CARES, where a DHS caseworker disclosed information about mother's juvenile records to the CARES personnel who, in turn, recited it in a report that was provided to the parties.

At some point thereafter, DHS entered into a "voluntary service agreement" with mother which provided for further evaluations and a "safety plan" for the children to remain at home with mother. While mother was unrepresented by counsel and participating in the voluntary service agreement, she agreed to participate in two new evaluations. Among the materials that DHS provided to both evaluators were evaluations of mother that DHS obtained when she was a minor and in DHS's custody as a foster child.

On February 1, 2011, a DHS caseworker talked to one of the current case evaluators. The next day the caseworker reviewed the other evaluator's report. On February 3, DHS filed a petition asserting that D. M. and her three younger siblings were within the jurisdiction of the juvenile court. On the same day, the court entered a

shelter order, and counsel was appointed for mother. The records that DHS provided to the court and all parties at the shelter hearing included the CARES evaluation of D. M. and various assessment documents, which referred to evaluations of mother that occurred while she was a ward of the juvenile court.

On March 14, DHS submitted a court report to all the parties noting that mother had been evaluated by Dr. Basham and Dr. King while she was a ward in 2001. The report stated, "Please see Social File for the above mentioned evaluations." Before the date set for a jurisdictional hearing on the petition, the state filed two motions to disclose mother's protected health information from her current case evaluations, which included information pertaining to her earlier wardship evaluations. On April 21, a hearing on the state's motions to disclose and a case settlement conference were concurrently scheduled. Before the motions to disclose could be heard, mother waived her right to a hearing on the dependency petition and made admissions that established juvenile court jurisdiction over her four youngest children. The admissions were the product of negotiations between mother and the state, and no evidence was offered or taken at the hearing. The admissions were:

"2A. The mothers'[s] cognitive limitations and history of mental illness combine to interfere with her ability to safely parent her children.

"2B. The mother has been subjected to domestic violence by [father], some of which occurred in the presence of the children.

"2C. Mother needs the assistance of the court and social service providers and an array of comprehensive services which will assist her to safely parent."

The parties and the juvenile court then discussed the 2006 order. The court indicated that its 2006 order applied to both the DHS file and the court's social file.

"[THE COURT]: Anything, any materials that the agency had in—how do I say this—In [mother's] child's or children's file that they got from her file when she was a child, her dependency case, had to be removed from

"[STATE'S ATTORNEY]: the child's—

"[THE COURT]: I could give—back into her dependency file and treated as privileged. That was my intent.

"[STATE'S ATTORNEY]: Ok.

"[THE COURT]: So just because you happen to, your client happened to have an evaluation that was done when she was, I don't know, 13 years old, when she was a dependent child, you can't use that. That was my ruling at the time. You can't use that—You can't access that—You can't do anything with that now.

"[STATE'S ATTORNEY]: For that child.

"[THE COURT]: All children.

"[STATE'S ATTORNEY]: Ok. It says specifically 'in this her child's dependency' case and then again 'in this case.' So I guess that would be the agency's first issue is that this was read to apply to that child. So—

"[THE COURT]: [STATE'S ATTORNEY], is there any dispute that the agency didn't do what I told them to do? How else would they have this paperwork?

"*****

"[THE COURT]: Ok, cause I'm not going to re-litigate this. It says that the material is privileged and as such shall be removed from any file in this her child's dependency case and any reference to that materials shall be redacted from the social file in this case. So there's an 'and' and there's two different kinds of files.

"[STATE'S ATTORNEY]: So, Ok, so then the court, I'm just trying to make sure I'm understanding correctly. So the court's position is that we cannot use anything from the person who is now the mom, we cannot use anything from her dependency file when she was a dependent in our care, as we move forward to evaluate safety concerns on her children who have now come in to care."

The court and parties further discussed the application of the 2006 order to the current case, with DHS taking the position that mother's earlier wardship evaluations provided pertinent background for any new psychological evaluation in this case:

"If the court were to say you cannot use the evals that were done when this was a voluntary case because you used

things that I told you not to use. Fine. Then we'll talk about how do we move forward maybe, and [mother's attorney] talked about maybe starting fresh with a new evaluator. But then the issue becomes, what can the agency provide to that new evaluator in terms of making sure that the evaluator has what we feel to be a full range of enough information that he understands the history of the case without running afoul of the court's order * * *. And so that's where it becomes relevant now."

In the judgment that it entered following the April 21, 2011, hearing, the court accepted mother's admissions, took jurisdiction, and ordered mother to

"enroll in parenting classes as arranged by DHS; obtain stable and suitable housing and/or maintain such housing; maintain regular visitation with the children, as arranged by DHS; maintain contact with DHS and keep the agency advised of current contact information at all times; attend children's doctor's appointments as appropriate; cooperate with DD services or ARC."

The court deferred ordering a further psychological evaluation for mother, and it also deferred ordering mother to sign releases for all services. In a section of the judgment entitled "Additional Finding of Fact Related to Disposition" the court said:

"There is an ongoing dispute regarding how the parties wish to proceed in light of this court's order re [mother's] childhood dependency file. The court encourages the parties to try to settle this issue. The court will not 'reconsider' its 2006 order. If the parties cannot settle, the issue will be decided by the court."

That judgment was entered on May 2, and there was no appeal from it.

On May 22, 2011, DHS filed two additional motions in the juvenile court. In a "Motion to Clarify Judgment," DHS asked the court to "clarify" the meaning of its 2006 judgment, "whether the use of the word 'removal' [sic] meant to remove and destroy records, or to seal the record." In the motion to clarify, the state posited:

"If the court intended DHS to seal—but not remove any records from—mother's dependency file, the agency can

and will do so. In that event, however, the agency moves this court to unseal the file for the reasons described in its accompanying Motion to Unseal Mother's DHS Records As A Dependent."

In the conclusion of the motion, the state requested that "the judgment be clarified. Specifically, whether the use of the word 'removal' meant to remove and destroy records, or to seal the record." The second motion was entitled "Motion to Unseal Mother's DHS Records as a Dependent." In its introductory paragraph, that motion stated that, "[i]f the court clarifies its past judgment and explains that DHS should seal mother's records as a dependent, DHS moves this court to unseal the records for use in this dependency case."

Mother filed a reply memorandum to the motions, and the court heard argument on the motions. No evidence was offered and no offer of proof was made at that hearing. Ultimately, the court entered an order denying both the motion for clarification and the motion to unseal. The state's appeal from the portion of the order denying its motion to unseal mother's DHS records is now before us.

The most straightforward resolution of the case begins with framing the issue on appeal in accordance with the state's brief. As explained in its brief, "[t]he state seeks reversal of the juvenile court's Order denying its Motion to Unseal Mother's DHS Records as a Dependent." In its assignment of error, the state asserts that "[t]he juvenile court erred in applying its 2006 judgment to the separate juvenile court proceedings regarding [D. M. and her three younger siblings] and in denying DHS's motion to unseal mother's records as a dependent."[1] Finally, the state urges this court to reverse

"[t]he juvenile court's judgment denying DHS's motion to unseal mother's dependency file *** and *** remand[] to the juvenile court with instruction to allow DHS to access and share history and prognoses in mother's juvenile dependency with mother's service providers, including mental health evaluators. In the alternative, this court

_____

[1] The state does not suggest that the juvenile court applied the 2006 judgment to this proceeding other than by denying DHS's motion to unseal mother's records.

should reverse and remand with instruction that the juvenile court review mother's juvenile court dependency and DHS files to determine whether information contained therein is relevant to services required in mother's case plan."

We belabor the state's position at length in order to explain why we are unable to reach the merits of its arguments about whether mother's wardship records are subject to use or disclosure in this dependency case involving her own children.[2] It is axiomatic that, for a court to unseal a record, that record must have previously been sealed. As noted, the trial court denied the motion to clarify the 2006 judgment. In doing so, the court did not indicate that it had, in fact, "sealed" mother's dependency records; rather, as indicated in the 2006 judgment itself, and as the court reiterated at the hearing that resulted in the April 21, 2011, judgment, the court (1) directed DHS to remove mother's dependency records from the juvenile court case file and return them to her own DHS wardship dependency file; and (2) adhered to its conclusion in the 2006 judgment that those records were privileged.

A designation of a record as privileged is not tantamount to an order sealing it. A party can seek disclosure of privileged documents and, upon a proper record that may include an offer of proof or an *in camera* inspection of records, the court can determine issues relating to the scope of the privilege, whether it is subject to one or more exceptions, and various other issues that may be pertinent to a particular request for disclosure. *See, e.g., A. G. v. Guitron*, 351 Or 465, 484, 268 P3d 589 (2011) (noting that ORCP 44 C may require disclosure of documents that are otherwise privileged); *Kahn v. Pony Express Courier Corp.*, 173 Or App 127, 134, 20 P3d 837, *rev den*, 332 Or 518, (2001) (holding that a party seeking disclosure of privileged material must show that material is subject to exception to privilege). In fact, as noted, the state filed two such motions for disclosure of mother's current evaluations in this case, which included information pertaining to her earlier wardship evaluations.

___

[2] The merits of that argument involve the interplay of various statutes in the juvenile dependency code, including ORS 419A.225, ORS 419A.255, and ORS 419B.035.

However, the juvenile court has yet to formally decide those motions.

Sealing, by contrast, refers to the process of closing a record and preventing access to it. *See Black's Law Dictionary* 1376 (8th ed 2004). Thus, "sealing" is sometimes used as a method to effectuate the expunction of a judicial record. *See, e.g.,* ORS 419A.260(1)(b) (providing, in part, that "expunction" means "[t]he removal and destruction or sealing of a judgment or order"). In the absence of specific statutory authority to do so, courts lack inherent authority to order the sealing of judicial records. *Cox v. M. A. L.,* 239 Or App 350, 354, 244 P3d 828 (2010).

In this case, there is no indication that the juvenile court ever sealed mother's wardship records. Nor does DHS point to any order in which it cogently asserts that the court did so. For that reason, we cannot say that the juvenile court erred in denying DHS's motion to unseal. It may be that a future opportunity will arise in this case for the parties to litigate the merits of the state's assertion that ORS 419A.255 does not bar the disclosure or use of mother's dependency records in this proceeding involving her own children. However, that opportunity is not presented in this appeal, which, as noted, concerns only the denial of the motion to unseal, not the earlier jurisdictional judgments from which DHS did not appeal.

Affirmed.