Argued and submitted June 9, 2009, affirmed October 27, 2010

A. G.,
*Plaintiff-Appellant,*

*v.*

Robert GUITRON,
Aerobic and Dancewear Shoppe, LLC,
dba Lake Oswego Academy of Dance,
*Defendants-Respondents.*

Multnomah County Circuit Court
060909578; A137591

241 P3d 1188

Jonathan Clark argued the cause for appellant. With him on the briefs was Jonathan A. Clark, PC.

Janet M. Schroer argued the cause for respondent Aerobic and Dancewear Shoppe, LLC. With her on the brief was Matthew J. Kalmanson.

No appearance for respondent Robert Guitron.

Before Haselton, Presiding Judge, and Armstrong, Judge, and Rosenblum, Judge.

ARMSTRONG, J.

## ARMSTRONG, J.

Plaintiff filed an action against defendant Guitron that asserted claims for sexual battery of a minor and intentional infliction of emotional distress, based on alleged sexual abuse of plaintiff by Guitron when Guitron was plaintiff's dance instructor. Plaintiff also asserted claims against Guitron's employer at the time, defendant Lake Oswego Academy of Dance (the academy), for Guitron's alleged abuse. The action was tried to a jury, resulting in a directed verdict in favor of the academy and a jury verdict in favor of Guitron. On appeal, plaintiff assigns error to the trial court's grant of the directed verdict in favor of the academy. She further assigns error to the trial court's exclusion of expert testimony by plaintiff's forensic psychologist, Dr. Green, as a sanction for a purported discovery violation by plaintiff for failing to provide defendants with a copy of a report by Green.

We conclude that the trial court did not err in finding that plaintiff had committed a discovery violation and in excluding Green's testimony. In light of our resolution of that issue and the jury verdict in favor of Guitron, we also conclude that any error in directing a verdict in favor of the academy is harmless. We therefore affirm the judgment.

The facts essential to our decision are primarily procedural. During pretrial discovery, the academy asked plaintiff to produce all records of treatment or examination of plaintiff relating to her claimed injuries. In response to that request, plaintiff provided defendants with copies of the records of her treating psychologist, Puma. She did not provide them with a copy of a report by Green of a psychological examination of plaintiff that Green had performed.

At trial, plaintiff sought to call Green to testify about the results of his examination of plaintiff. The academy objected on the ground that it had not received a copy of Green's report, which it contended constituted a discovery violation for which the appropriate sanction was exclusion of Green's testimony.

Plaintiff disputed that her failure to provide defendants with a copy of Green's report constituted a discovery violation, arguing that Green had been retained as an expert

for trial and, as a consequence, his report was not discoverable. The trial court concluded that the report was discoverable, that plaintiff had committed a discovery violation by failing to provide it to defendants, and that the appropriate sanction for the violation was to exclude Green's testimony.

After the trial court's ruling, plaintiff made an offer of proof outside the presence of the jury. In the offer of proof, Green testified about his examination of plaintiff, her psychological injuries, and his conclusions about the cause of her injuries.

During trial, both Guitron and the academy moved for directed verdicts in their favor. The trial court granted the academy's motion but denied Guitron's motion. At the conclusion of trial, the jury returned a verdict in favor of Guitron.

■ We begin with plaintiff's second assignment of error on the exclusion of Green's testimony, because its resolution significantly affects our consideration of plaintiff's assignment of error on the directed verdict. Plaintiff contends that the trial court erred in concluding that she had committed a discovery violation by failing to give defendants a copy of Green's report. She does not challenge the sanction that the court imposed for the violation: exclusion of Green's testimony at trial. Hence, the determinative issue is whether the trial court erred in concluding that plaintiff had committed a discovery violation, which we review for legal error. *See, e.g.,* *State v. Moss*, 147 Or App 658, 663, 938 P2d 215 (1997).

■ ORCP 44 C provides:

"In a civil action where a claim is made for damages for injuries to the party or to a person in the custody or under the legal control of a party, upon the request of the party against whom the claim is pending, the claimant shall deliver to the requesting party a copy of all written reports and existing notations of any examinations relating to injuries for which recovery is sought unless the claimant shows inability to comply."

Plaintiff asserted claims against defendants for psychological injuries that she allegedly sustained as a result of Guitron's alleged sexual abuse of her. Green conducted a psychological examination of plaintiff regarding her injuries and produced

a written report of the examination. The academy asked plaintiff to produce all written reports of examinations relating to her injuries. In response to that request, plaintiff produced records from her therapist, Puma, regarding psychological counseling and treatment that plaintiff had received from Puma, but not Green's report. Under the terms of the rule, Green's report appears to be one that plaintiff was required to produce under ORCP 44 C and, hence, plaintiff violated the rule by failing to produce it.

Plaintiff disputes that conclusion. Although the rule does not distinguish between reports and notations of examinations that are produced by physicians and psychologists in the course of treating a person's injuries and those that are produced as a result of examinations conducted by those professionals for purposes of litigation, plaintiff contends that the rule necessarily embodies such a distinction. She claims support for that distinction from the fact that the Oregon Rules of Civil Procedure generally do not provide for expert discovery. *See, e.g., Stevens v. Czerniak*, 336 Or 392, 400-05, 84 P3d 140 (2004). She reasons that, in light of that principle, ORCP 44 C would need to explicitly provide for the production of reports of examinations conducted by physicians and psychologists for purposes of litigation in order for the rule to cover such reports.

Plaintiff recognizes that, notwithstanding the general policy against expert discovery, ORCP 44 A and B provide for the discovery of reports prepared by experts who conduct examinations of people for purposes of litigation. ORCP 44 A authorizes a court to order a party or person to submit to a physical or mental examination by a physician or psychologist when the party's or person's mental or physical condition or blood relationship is in controversy. ORCP 44 B, in turn, permits the examined party or person to request from the party who sought the examination a detailed report from the physician or psychologist of the physician's or psychologist's findings, including test results, diagnoses, and conclusions, "together with like reports of all earlier examinations of the same condition." The rule goes on to provide that, after delivering such reports, the party who caused the examination to be made can request from the party "against whom

the [examination] order is made a like report of any examination, previously or thereafter made, of the same condition."

Plaintiff believes, however, that those provisions support her contention that ORCP 44 C must be understood to distinguish between reports of examinations by treating physicians and psychologists and those of examinations conducted by them for purposes of litigation, that is, reports of forensic examinations. She reasons that ORCP 44 C must embody that distinction because, otherwise, the conditions that must be met under ORCP 44 A and B for a forensic report such as Green's to be discoverable are superfluous.

As described above, a forensic report such as Green's is discoverable by a defendant under ORCP 44 A and B only if two conditions are met: (1) the plaintiff is examined by a physician or psychologist as a result of a court order or an agreement with the defendant, and (2) the plaintiff requests that the defendant deliver to the plaintiff a report from the physician or psychologist of the physician's or psychologist's findings. When those conditions are met, the defendant is entitled to request that the plaintiff produce equivalent reports of any other examinations of the plaintiff by physicians or psychologists for the physical or mental condition that was the subject of the court order or agreement.

If ORCP 44 C applies to reports of forensic examinations, then a defendant can obtain a forensic report such as Green's without the conditions in ORCP 44 A and B being met. According to plaintiff, the appropriate way to avoid the apparent incongruity—production under ORCP 44 C of a report of a forensic examination when the conditions specified in ORCP 44 A and B for production of the report have not been met—is to conclude that ORCP 44 C does not apply to reports of forensic examinations.

We appreciate plaintiff's argument. However, a review of the history of ORCP 44 leads us to conclude that ORCP 44 C does not embody the distinction that plaintiff posits.

ORCP 44 is the product of a process that began with *Carnine v. Tibbetts*, 158 Or 21, 30-31, 74 P2d 974 (1937), in which the Supreme Court held that Oregon trial courts had

the authority to order a plaintiff in a personal injury action to submit to an examination by a physician selected by a defendant. Subsequently, in *Nielsen v. Brown*, 232 Or 426, 439-44, 374 P2d 896 (1962), *overruled in part on other grounds by State v. Foster*, 296 Or 174, 182, 674 P2d 587 (1983), the court effectively directed trial courts to include in orders requiring plaintiffs to submit to examinations by defendant-selected physicians a requirement that a copy of the physician's report be given to the plaintiff. The court relied on FRCP 35(b)(1) as support for that requirement even though FRCP 35(b)(1) requires a defendant to deliver such a report to a plaintiff only when the plaintiff requests it.

In 1973, the Oregon legislature enacted a bill, House Bill (HB) 2101, that sought to codify the procedures established in *Carnine* and *Nielsen* and to create a procedure by which defendants could obtain from plaintiffs reports of examinations by plaintiffs' physicians. HB 2101 was introduced at the request of the Oregon State Bar and was said to represent a consensus among plaintiff and defense lawyers regarding the examination of plaintiffs and the production of examination-related reports.

The provisions that codified the procedures in *Carnine* and *Nielsen* were based in part on FRCP 35. *Compare* Or Laws 1973, ch 136, §§ 1, 2, *with* FRCP 35(a), (b)(1). *See also* Tape Recording, House Judiciary Committee, Subcommittee No. 2, HB 2101, Feb 12, 1973, Tape 6, Side 1 (statements of Austin Crowe and David Landis). Those provisions gave trial courts authority in personal-injury actions to order a plaintiff to submit to a physical or mental examination by a physician selected by a defendant, and gave the plaintiff and any other party the right to obtain a copy of a detailed written report by the physician of the results of the examination. Or Laws 1973, ch 136, §§ 1, 2.

Significantly, section 3 of HB 2101, the provision that gave defendants the ability to obtain reports of examinations by plaintiffs' physicians, was not based on FRCP 35. Under FRCP 35, a defendant can obtain such reports only after (1) the plaintiff has been examined by a physician at the behest of the defendant or another party, either by court order or agreement, and (2) the plaintiff has obtained a copy

of a written report by the physician of the results of the examination. *See* FRCP 35(a), (b)(1), (3). In contrast, section 3 of HB 2101 gave defendants the ability to obtain reports of examinations by plaintiffs' physicians without any preconditions:

> "Upon the request of the party against whom the [personal-injury] claim is pending the claimant shall deliver to him a copy of all written reports of any examinations relating to injuries for which recovery is sought unless the claimant shows that he is unable to comply."

Or Laws 1973, ch 136, § 3.

The lawyers who were involved in drafting HB 2101 and who testified in support of it made several points about the bill. They said that the decision to require plaintiffs to produce reports from their physicians without first requiring them to submit to an examination by a physician selected by a defendant was intended to reduce litigation costs by giving defendants information by which to settle or defend personal-injury claims without requiring them to incur the cost of an examination of the plaintiff by a defendant-selected physician in order to get that information. Tape Recording, House Judiciary Committee, Subcommittee No. 2, HB 2101, Feb 12, 1973, Tape 6, Side 1 (statements of Austin Crowe and David Landis).

They also said that the provisions were intended to create reciprocity between plaintiffs and defendants regarding the exchange of reports by physicians who had examined the plaintiff and who might testify at trial about the results of their examinations. *Id.* Before the adoption of HB 2101, only defendants were required to produce reports of examinations of plaintiffs conducted by physicians chosen by defendants. That meant that only plaintiffs would know before trial the conclusions that physicians chosen by their opposing party had reached as a result of their examinations of plaintiffs and, accordingly, only plaintiffs could use such reports to prepare to cross-examine the opposing physicians if they testified at trial. The provisions in HB 2101 that codified the procedures in *Carnine* and *Nielsen* preserved the ability of plaintiffs to receive reports of examinations by defendant-selected physicians, and section 3 of the bill created the

means by which defendants would receive comparable reports from plaintiffs, thereby establishing a process for a reciprocal exchange of examination reports by physicians who might testify at trial about the results of their examinations. *Id.*

The lawyers who spoke in support of the bill referred at times to the production of reports by treating physicians and to trial testimony by them, *see, e.g., id.*, but we understand those references to reflect an assumption that treating physicians typically would be the physicians who would testify for plaintiffs at trial. We do not understand those references to suggest that plaintiffs would have to produce only reports by their treating physicians. Section 3 of the bill, the provision that addresses those reports, is consistent with our understanding. It requires plaintiffs to produce copies "of *all* written reports of *any* examinations relating to injuries for which recovery is sought." Or Laws 1973, ch 136, § 3 (emphasis added). That language is unqualified and does not distinguish between examinations for purposes of treatment and those for forensic or other purposes.

Moreover, the legislature's decision to follow a different path from that taken by FRCP 35 to achieve a reciprocal exchange of examination reports supports our understanding. FRCP 35 produces a reciprocal exchange of reports by all physicians who have examined a plaintiff, if the conditions for such an exchange are met, that is, if the plaintiff is examined by a defendant-selected physician and the plaintiff requests a report of the examination. The reciprocal exchange of reports under FRCP 35 includes *all* reports of *all* examinations. It does not distinguish between reports by treating physicians and reports by physicians who have examined the plaintiff in order to testify at trial about the plaintiff's injuries.

HB 2101 did not make the production of reports by plaintiffs dependent on an examination of the plaintiff by a defendant-selected physician and a request by the plaintiff for a report of the examination. However, the decision not to impose those conditions reflected a decision about the sequence by which a reciprocal exchange of reports by physicians of their examinations of a plaintiff would occur, not the

ultimate result of such an exchange. Although a reciprocal exchange of reports under HB 2101 would occur only when plaintiffs were subjected to examinations by defendant-selected physicians, the exchange required under HB 2101 did not distinguish among types of examinations relating to the plaintiff's injuries.[1]

In summary, HB 2101 required plaintiffs to produce all reports of all examinations of plaintiffs relating to the personal injuries for which they sought relief against a defendant. It drew no distinction between examinations by treating physicians and forensic examinations.

The Council on Court Procedures incorporated and modified the provisions of HB 2101 when it promulgated ORCP 44 in 1978. Two aspects of its work in doing that are important to our understanding of ORCP 44 as it applies to this case.

First, the council in essence adopted section 3 of HB 2101 as ORCP 44 C. *Compare* Or Laws 1973, ch 136, § 3, *with* ORCP 44 C. *See also* Minutes, House Judiciary Committee, HB 3131, Apr 12, 1979, 4. In other words, it retained the provision that requires a plaintiff in a personal injury action to deliver to a defendant, on request, copies "of all written reports * * * of any examinations relating to injuries for which recovery is sought." ORCP 44 C.

Second, the council essentially adopted as ORCP 44 A and B the provisions of FRCP 35 on the examination of parties and people by court order or agreement and the exchange of reports of those examinations. *Compare* ORCP 44 A, B, *with* FRCP 35(a), (b)(1). The effect of doing that was to

---

[1] In fact, a distinction between examinations by treating physicians and those conducted for forensic purposes would undercut one of the stated purposes behind the reciprocal exchange of reports, which was to enable both plaintiffs and defendants to prepare to cross-examine physicians who would testify at trial about the results of their examinations of plaintiffs. *See* Tape Recording, House Judiciary Committee, Subcommittee No. 2, HB 2101, Feb 12, 1973, Tape 6, Side 1 (statements of Austin Crowe and David Landis). If section 3 of HB 2101 applied only to examinations by treating physicians, then a plaintiff could obtain a forensic examination and call as a witness only the physician who had conducted that examination without the defendant having received a pretrial report from the physician. In contrast, the plaintiff would receive pretrial reports under HB 2101 from all defendant-selected physicians who had examined the plaintiff for purposes of trial.

expand the authority of Oregon courts to order examinations of people when their physical or mental condition is in controversy. Under HB 2101, the authority to order examinations had been limited to personal-injury actions and to people who were asserting personal-injury claims. *See* Or Laws 1973, ch 136, § 1. Under ORCP 44 A (and FRCP 35(a)), a court can order an examination of any person whose physical or mental condition or blood relationship is in controversy in any action. In conjunction with its decision to expand court authority to order examinations by adopting the language in FRCP 35(a), the council also decided to adopt the language in FRCP 35(b)(1) on the exchange of reports from those examinations.

We have examined the available materials from the council and the Oregon legislature bearing on the adoption of ORCP 44 by the council and the legislature. Nothing in those materials suggests that the adoption of ORCP 44 A and B was intended to affect the policy embodied in ORCP 44 C. In other words, nothing suggests that the adoption of ORCP 44 A and B was intended to alter the requirement in section 3 of HB 2101—which was incorporated in ORCP 44 C—for plaintiffs in personal-injury actions to deliver to defendants, on request, all reports of all examinations of plaintiffs "relating to injuries for which recovery is sought." The council and the legislature expanded court authority to order examinations and the exchange of reports resulting from those examinations under ORCP 44 A and B. In doing so, they did not limit the requirement for the delivery of reports in ORCP 44 C.

In light of the foregoing, we conclude that Green's report was subject to production under ORCP 44 C. Hence, the trial court did not err in concluding that plaintiff had committed a discovery violation by failing to produce the report to the academy in response to its discovery request. Further, because plaintiff does not dispute that exclusion of Green's testimony was an appropriate sanction for the violation, we conclude that the court did not err in excluding Green's testimony.

■■ In light of that determination, we turn to plaintiff's first assignment of error, which challenges the grant of a directed verdict in favor of the academy on plaintiff's claims.

Even were we to conclude that the court erred in granting the directed verdict, we agree with the academy that, given our conclusion that Green's testimony was properly excluded, any error in granting the directed verdict was harmless. For an employer to be found liable under a theory of *respondeat superior* for tortious conduct by its employee, the employee must have engaged in the tortious conduct for which the employer is found liable. *See Kowaleski v. Kowaleski,* 227 Or 45, 50, 361 P2d 62 (1961); *Kraft v. Montgomery Ward & Co., Inc.*, 220 Or 230, 251, 348 P2d 239 (1959). At the conclusion of the trial, the jury found for Guitron on the two claims against him. Given that disposition, the academy cannot be liable on those claims.

■     The result is the same for plaintiff's negligence claim against the academy. Even were we to accept plaintiff's argument that she had presented sufficient evidence for a jury to find that the academy had failed to take reasonable steps to protect plaintiff from a foreseeable risk of sexual abuse by a dance instructor, the directed verdict in favor of the academy on that claim was also harmless. Plaintiff's claim for negligence required her to establish that the academy's negligence had caused her harm. *See Joshi v. Providence Health System,* 342 Or 152, 158, 149 P3d 1164 (2006). The jury verdict in favor of Guitron on the sexual battery and intentional infliction of emotional distress claims breaks any causal connection between the claimed negligence by the academy in failing to put in place adequate policies to protect its students against sexual abuse by its dance instructors and the harm that plaintiff allegedly suffered.

Affirmed.