Argued and submitted August 29, 2019, affirmed March 10, 2021

Virginia THOMPSON,
*Plaintiff-Appellant,*
*v.*

Wade MARSHALL
and Cheryl Marshall, dba Marshall Logging;
Dale Thompson, dba Five Mountains Logging;
Chris Thompson, an individual; and
Tide Creek Logging and Construction, Inc.,
an Oregon corporation,
*Defendants-Respondents.*

Columbia County Circuit Court
14CV19632; A166528

484 P3d 336

In this complex timber trespass case, plaintiff alleged that defendants had cut down trees on two of her lots, and on the northern half of a never-developed county "road" that she claimed to own pursuant to ORS 93.310(4) because, she asserted, it was the boundary between her lots and certain defendants' property to the south. Defendants argued that plaintiff either never owned the lots at issue or that she had lost her rights to them through adverse possession, and that she had no rights to the abutting road either. In a special verdict form, the jury found that defendants did not cut down any trees on plaintiff's property and, without needing to reach any further questions, reached a defense verdict. Plaintiff raises three assignments of error. First, she contends that the trial court erred in directing a verdict for defendants and instructing the jury that she had no rights to timber in the northern half of the road. Second, she contends that the court erred in denying her motion for directed verdict against defendants' adverse possession defenses and counterclaim. Third, she contends that the court erred in instructing the jury about the statutory damage multipliers that could apply if the jury found for her. *Held*: Even assuming the trial court erred in granting defendants' motion for directed verdict and instructing the jury that plaintiff had no right to the trees on the northern half of the road, any error was harmless on this record. The trial court did not err in denying plaintiff's motion for directed verdict against defendants' adverse possession defenses and counterclaim. Finally, even assuming that the trial court erred in informing the jury about the existence of damage multipliers, any error was harmless in light of the jury's special verdict.

Affirmed.

Cathleen B. Callahan, Judge.

Michael E. Haglund argued the cause for appellant. Also on the briefs were Matthew E. Malmsheimer and Haglund Kelley LLP.

Leslie A. Kocher-Moar argued the cause for respondents. Also on the joint brief were MacMillan, Scholz & Marks, P.C., Stephen D. Petersen, and Stephen D. Petersen, LLC.

Before Ortega, Presiding Judge, and Shorr, Judge, and James, Judge.

SHORR, J.

Affirmed.

**SHORR, J.**

This complex case concerns timber trespass claims. Plaintiff filed her lawsuit alleging that defendants had intentionally and negligently logged trees on her property. She sought damages for the removed timber. Plaintiff claimed that defendants cut down trees on two of her lots and on the northern half of a never-developed county "road" that she claimed to own because, she asserted, it was a boundary road between her lots and certain defendants' property to the south. Defendants argued that plaintiff either never owned the lots at issue or that she had lost her rights in those lots through adverse possession. The trial court instructed the jury that plaintiff had no ownership interest in the road and could not recover for timber trespass for trees that defendants felled on the northern half of the road. The court also instructed the jury that it would double any damages that the jury found for "casual" or "involuntary trespass" and triple any damages for "willful" timber trespass. In a special verdict form, the jury found that defendants did not cut down any trees on plaintiff's property and, without needing to reach any further questions of liability or damages, reached a defense verdict. Plaintiff now appeals.

Plaintiff raises three assignments of error. First, she contends that the trial court erred in directing a verdict for defendants and then instructing the jury that plaintiff had no rights to timber in the northern half of the road that abutted her property. Second, she contends that the court erred in denying her motion for directed verdict against defendants' adverse possession defense. Third, she contends that the court erred in instructing the jury that the court would apply a two- or three-times multiplier to the damages award if the jury found that defendants committed either "casual" or "willful" timber trespass, respectively. For the reasons discussed below, we reject each of plaintiff's assignments of error and, accordingly, affirm.

We begin with the important and undisputed procedural facts before turning to the substantive facts. Plaintiff filed her timber trespass claims against two sets of defendants, the Marshalls (the landowner defendants) and Chris Thompson, Dale Thompson, and Tide Creek Logging

and Construction, Inc. (collectively, the logger defendants). Plaintiff alleged that she owned the rights to timber on forested property she obtained by quitclaim deed in Columbia County. On the first day of trial, the trial court allowed plaintiff to amend her complaint to allege that she also owned the timber rights "to the midpoint of" Beaver Valley Road, a dedicated, but undeveloped, road that abuts her claimed property along its southern edge. That requested amendment was solely based on plaintiff's legal contention that, under Oregon law, an owner of property abutting a dedicated road also owns the property to the midpoint of the road. She further alleged that her neighbors immediately to the south, the landowner defendants, hired the logger defendants to clear cut trees on the landowner defendants' property. Lastly, as relevant here, she alleged that defendants either negligently or intentionally logged trees that were on plaintiff's property, including trees on the northern half of the road that divided plaintiff's and the landowner defendants' properties. Those allegations form the primary bases for plaintiff's timber trespass claims.

Both sets of defendants generally denied the timber trespass allegations. They also asserted as either affirmative defenses or a counterclaim that the landowner defendants adversely possessed the logged property claimed by plaintiff. Additionally, at trial, one of defendants' primary defenses was that plaintiff did not obtain title to any of the logged property through her quitclaim deeds.

The parties proceeded to trial on those allegations and defenses. The trial court made three rulings at the end of trial that are relevant on appeal. After the close of evidence, both parties brought motions for directed verdict. Defendants moved for a directed verdict against plaintiff's claim that she had a right to the timber that was in the Beaver Valley Road adjacent to her claimed property, and, as such, that she could not assert a timber trespass claim as to that timber. The court granted that motion and instructed the jury that plaintiff was "not entitled *** to claim any rights to the timber on the northern half of the Beaver Valley Road." Plaintiff moved for a directed verdict against defendants' adverse possession defenses and counterclaim, which the court denied. Finally, in addition to

instructing the jury that plaintiff had no claim to trees that were in Beaver Valley Road, the court instructed the jury on how the court would compute the final damages—either doubling or trebling the damages as required for a timber trespass—if the jury found liability and damages.

With that general background complete, we turn to some of the underlying substantive facts. On review of motions for directed verdict, we must determine whether, viewing the evidence in the light most favorable to the non-moving party, a reasonable factfinder could only find in favor of the moving party. *See Kelley v. Washington County*, 303 Or App 20, 21-22, 463 P3d 36 (2020). In this case, with respect to the trial court's grant of directed verdict to defendants on ownership of Beaver Valley Road, that standard of review requires that we view the evidence in the light most favorable to plaintiff. However, with respect to the trial court's denial of plaintiff's motion for directed verdict on adverse possession, that standard requires that we view the evidence in the light most favorable to defendants. In addition, because, as explained below, we ultimately determine that the court's grant of defendants' motion for directed verdict did not substantially affect plaintiff's rights, we also consider the record as a whole for that issue, and not viewed in the light most favorably to plaintiff, which, in this case, includes reciting evidence introduced by defendants on key disputed factual issues. *See Ossanna v. Nike, Inc.*, 290 Or App 16, 19, 415 P3d 55 (2018), *aff'd*, 365 Or 196, 445 P3d 281 (2019) ("If, after review, we conclude that the trial court has erred, *we consider the record as a whole* to determine whether the error was nonetheless harmless." (Emphasis added.)); *Piazza v. Dept. of Human Services*, 261 Or App 425, 437, 323 P3d 444, *rev den*, 355 Or 879 (2014) (on review of grant of directed verdict, stating that "we will only reverse a trial court's decision if the purported error substantially affected the aggrieved party's rights"). With those standards in mind, we recite the key substantive facts, and make note where a fact was in dispute.

Columbia County Investment Company was the original owner and common grantor of the properties at issue. The investment company platted a housing subdivision called "Beaver Homes" in 1910 on a tract of land in

Columbia County. The plat included two of the lots at issue in this case, lots 2 and 3, part of which were acquired years later by the landowner defendants, Wade and Cheryl Marshall. Lots 2 and 3 are located in the northwest quarter of section 22 as drawn on the first page of the subdivision plat, which is reproduced below:



Columbia County Investment Company did not own north of section 22 and the Beaver Homes development did not extend above section 22. Although the map does not show this, section 15 lies immediately north of section 22 and is outside the Beaver Homes plat.

One of the roads depicted on the plat is called Beaver Valley Road. That road has never been constructed. The company's plat describes Beaver Valley Road as the northern boundary of Beaver Homes. However, plaintiff presented evidence that the road was not the actual boundary of the development because the platted road undulated south of the section line that divided section 22 (within the Beaver Homes development) and section 15 to the north. According to plaintiff, that undulation in the road left two small and irregular slivers of property that lay north of the platted lots 2 and 3 and lay north of Beaver Valley Road, but still within the Beaver Homes development. Defendants

put on evidence that those small, irregular lots were not, in fact, created by the Beaver Homes plat. However, we refer to those two irregular lots as tax lots 598 and 599 and discuss them in more detail later. At this point, it is only significant that, viewed in the light most favorable to plaintiff, plaintiff is the owner of existing tax lots 598 and 599, and they sit immediately north of the landowner defendants' property (the northern portions of lots 2 and 3 in the Beaver Homes plat).

The 1910 plat describes the northern boundary of Beaver Homes as going to the "center of County Road." There was disputed testimony presented by the parties about the name, location, and extent of this road as it extended across the entire development, particularly whether the disputed road ran along, south of, or perhaps even north of the section 22 line. However, as important for now, plaintiff presented evidence that the plat map depicts Beaver Valley Road as the northern boundary of lots 2 and 3, relevant portions of which were eventually purchased by the landowner defendants. There is no dispute that this road was never developed.

The 1910 plat also contained a dedication dedicating the identified roads in the plat map for public use. The dedication provided that streets had been delineated on the plat map and stated:

> "Columbia County Investment Company does hereby dedicate all said streets, avenues, alleys, roads and ways shown and set out on said map and plat to the use of the public as public highways for ever [*sic*][.]"

The plat, which included the dedication, included the signatures of a Columbia County Judge and Columbia County Commissioners.

The landowner defendants purchased their property on contract in 1989, and it was deeded to them by warranty deed in 1994. As relevant to this dispute, the warranty deed described the property as two parcels that were portions of lots 2 and 3 of the 1910 Beaver Homes plat map:

> "Parcel 1: The North 10 acres of Lot 3, Beaver Homes, Columbia [C]ounty, Oregon as per map of plat of same now of record in the office of the county * * *.

"Parcel 2: That part of Tract No. 2, Beaver Homes, Columgia [*sic*] County, Oregon, lying north of the county road."[1]

Thus, the landowner defendants' deed relied on the 1910 plat map of the Beaver Homes subdivision. For tax purposes, the landowner defendants' property is known as tax lot 500.

Plaintiff acquired tax lots 598 and 599 when she and her now-deceased husband purchased the lots at a sheriff's sale through a quitclaim deed from Columbia County in 1995. The county had created those tax lots in the 1970s with an "unknown" owner, and then later acquired those slivers of property in 1994 through foreclosure because, perhaps not surprisingly, no one was ever identified as the owner of the properties and no one had paid property taxes for the tax lots. Plaintiff acquired the properties for $50. The quitclaim deeds provided that the two tax lots were conveyed "AS-IS" without covenants or warranties. The quitclaim deed for tax lot 598 provided the following legal description:

"All that portion of the NW 1/4 N/W 1/4 of Section 22 *** lying North of Beaver Valley County Road and within the confines of the Northerly Extension of Tract 3, Beaver Homes."

The quitclaim deed for tax lot 599 somewhat similarly provided:

"All that portion of the NW 1/4 of the NW 1/4 of Section 22 *** lying Northerly of Beaver Valley County Road and within the confines of the Northerly Extension of Tract 2, Beaver Homes."

Thus, plaintiff's quitclaim deeds were also based on the original plat for the Beaver Homes development. The deeds identified her tax lots as lying north of the "Beaver Valley County Road" or "Beaver Valley Road" as it was originally designated on the plat map.

---

[1] The parties agree that the "county road" referenced in this deed is another road, the TS Whaley Road, whose location as a southern boundary of the Marshalls' property has no effect on the dispute between the parties. Additionally, the later deeds at issue sometimes use the terms "lot" and "tract" in ways that appear interchangeable, even if those terms can have distinct meanings. The original plat map referred to the divisions within the Beaver Home subdivision as lots. The parties use the terms "lots" in their briefs. For the purpose of this opinion, we do as well.

Plaintiff presented the following survey at trial that her surveyor claimed roughly depicts the disputed properties based on their tax lot numbers:



As illustrated above, plaintiff's tax lots 598 and 599 are the tiny slivers of land at the top of the map. Below that is a depiction of the undeveloped Beaver Valley Road. And, below that is the northern part of the landowner defendants' property. As noted above, defendants presented evidence at trial, including from their surveyor, that disputed that the quitclaim deeds to plaintiff conveyed any actual property contained within the Beaver Homes plat, contending that the county erred in creating tax lots that did not, in fact, exist.

Defendants also presented evidence at trial to support their adverse possession claim. Because the details of that evidence are not necessary to our resolution of the appeal, we summarily recite only the following. In 1989, the landowner defendants erected a barbed-wire fence between their property and the property owned to the north in section 15, after discussing the fence location with that property owner, so that they could graze cows on the property. It is undisputed that that fence approximately follows the section line between section 22 and section 15.

It was undisputed at trial that the landowner defendants hired the logger defendants to cut trees on their property. In doing so, it was also undisputed that the landowner defendants directed the logger defendants to cut the trees to the fence line, which they did. Plaintiff alleged that, as a result, defendants either negligently or intentionally

cut trees on plaintiff's tax lots and in the northern half of Beaver Valley Road, which plaintiff also claimed to own.

At the close of evidence, defendants moved for directed verdict, contending that plaintiff could not claim timber trespass for the trees located in the Beaver Valley Road. Plaintiff opposed that motion, contending that, under ORS 93.310(4), she owned the rights to the trees in the northern half of Beaver Valley Road because the road was the boundary between her two tax lots and the landowner defendants' property and was not held in title by anyone else. Defendants disputed that the road was the boundary between the properties. Defendants also contended that the road was held in title by someone else. Defendants argued three possibilities: (1) the road was owned by the landowner defendants subject to an easement over the road in favor of Columbia County, (2) the road was owned by Columbia County, or (3) the road was owned, in part, by the original developer Columbia County Investment Company.

The trial court granted defendants' directed verdict motion. It concluded that the road was not the dividing line because it concluded that the southern part of plaintiff's property began just north of the road. Because no physical road was ever constructed, the court envisioned a "curb" at the northern edge of the road that defined the southern edge of plaintiff's property. It appeared to conclude that plaintiff's property began at that curb just north of the road, meaning that the road was not the dividing line. The court's ruling regarding title to the road was not entirely clear. As we understand it, the court may have concluded that the landowner defendants own the property to the south of plaintiff's property "subject to" an easement in favor of the county over the road. The court also may have concluded that the landowner defendants generally own the area south of plaintiff's property with the one exception that the county owns title to Beaver Valley Road. In either case, the court concluded that plaintiff did not own any portion of the road because it was held in title by another party. As a result of the directed verdict, the court instructed the jury that plaintiff could not seek timber trespass claims for any trees that defendants logged in the northern half of Beaver Valley Road.

At the same time as defendants' directed verdict motion, plaintiff moved for a directed verdict against defendants' adverse possession defenses and counterclaim. Plaintiff contended that, if the road was public property, the landowner defendants could not adversely possess either it or the plaintiff's property that was clearly on the north side of the road. The landowner defendants argued that they owned the underlying title to the road and did not need to adversely possess that road and, in fact, did not claim to adversely possess the road. Instead, they explained that their adverse possession claim was directed solely at the plaintiff's property that was *north* of the road, and was based on the landowner defendants' historic exclusive use of that property, including their fencing on the section line. The trial court denied plaintiff's directed verdict motion, concluding that the landowner defendants had "provided enough evidence of their adverse possession of [plaintiff's property]" to go to the jury on the adverse possession affirmative defenses and counterclaim.

In addition to instructing the jury that plaintiff had no claim to trees that had been in Beaver Valley Road, the trial court instructed the jury on how the court would compute the final damages if the jury found liability and damages. The court instructed the jury that, if it found defendants had committed casual or involuntary timber trespass, the court would double any damages that the jury awarded. The court instructed the jury that, if it found defendants had committed willful timber trespass, the court would triple any damages awarded by the jury. Plaintiff objected and took exception to that instruction.

The jury returned a verdict in favor of defendants. The special verdict form's first question asked whether "defendants cut down trees on property owned by plaintiff[.]" The jury answered "NO" to that question in a handwritten response and, based on the instructions in the form, did not answer any further questions. Thus, the jury did not reach any of the subsequent questions, including the questions regarding whether defendant "willfully" or "casually" and "involuntarily" cut down trees on plaintiff's property and whether plaintiff sustained "any damages."

On appeal plaintiff assigns error to the trial court's grant of defendants' directed verdict motion, denial of plaintiff's directed verdict motion, and jury instruction on how the court would calculate damages.

Plaintiff first assigns error to the trial court's grant of defendants' directed verdict motion, which, by extension, includes the resulting jury instruction that she had no rights to timber in the northern half of Beaver Valley Road. *See Mead v. Legacy Health System*, 231 Or App 451, 456 n 5, 220 P3d 118 (2009), *aff'd in part, rev'd in part on other grounds*, 352 Or 267, 283 P3d 904 (2012) (treating a motion for directed verdict as the same as a motion to withdraw an issue from the jury by way of a peremptory instruction).[2] A decision to grant a motion for directed verdict is reviewed for legal error and is only appropriate when a party is entitled to it as a matter of law. *Kelley*, 303 Or App at 21. As noted above, in determining if the trial court erred, we must view the evidence in the light most favorable to plaintiff, which, in this case, means we must assume that plaintiff in fact owns property that abuts Beaver Valley Road. Assuming that fact, the parties' dispute about *title* to the road is solely based on the 1910 plat map and the relevant deeds, the construction of which presents purely a legal issue. *See Fossi v. Myers*, 271 Or 611, 615, 533 P2d 337 (1975) (stating that, "when the evidence of the conveying party's intention is the language in the conveyance, the party's intention is not to be decided as a question of fact"); *Landis v. Limbaugh*, 282 Or App 284, 297, 385 P3d 1139 (2016), *rev dismissed*, 361 Or 351 (2017) (observing that, if there is no ambiguity in the text, context, and extrinsic evidence relating to the conveyance, our analysis ends); *Howe v. Greenleaf*, 260 Or App 692, 700, 320 P3d 641 (2014) (noting that, if the evidence of the grantor's intention in conveying property comes solely from the conveyances, the issue is one of law).

On appeal, plaintiff reprises the essential arguments that she made in the trial court in opposition to

---

[2] As *Mead* notes, the proper procedure in this circumstance is not a motion for directed verdict, but a motion to withdraw an issue from the jury by way of a peremptory instruction; however, we treat the motions the same and analyze the issue under a directed-verdict standard of review. 231 Or App at 456 n 5.

defendants' directed verdict motion, relying on a legal presumption set forth in ORS 93.310, which provides, in part:

> "The following are the rules for construing the descriptive part of a conveyance of real property, when the construction is doubtful, and there are no other sufficient circumstances to determine it:
>
> "*  *  *  *  *
>
> "(4)   When a road *** is the boundary, the rights of the grantor to the middle of the road *** are included in the conveyance, except where the road *** is held under another title."

*See also Howe*, 260 Or App at 701 ("[T]he presumption in ORS 93.310(4) applies whenever the conveyance describes property that borders on a road, whether the property description expressly names the road as a boundary; whether the property is described in metes and bounds, such that it borders the road but the road is not expressly named in the conveyance; or whether the conveyance is by reference to a map that shows the road as a boundary."). That is, plaintiff's argument on appeal is solely a legal one—because she obtained property through the quitclaim deeds that abuts Beaver Valley Road, she also obtained title to the midpoint of Beaver Valley Road. We decline to address that argument on its merits, however, because, even if the trial court erred in concluding that plaintiff did not own property to the midpoint of the road, it was not reversible error.

We will only reverse a trial court judgment if the purported error substantially affected the rights of the aggrieved party. *Piazza*, 261 Or App at 437; *see also* ORS 19.415(2) ("No judgment shall be reversed or modified except for error substantially affecting the rights of a party."). Here, defendants argue that any error was harmless, because the jury found, as fact, that plaintiff did not own any property that abutted the Beaver Valley Road. We agree with defendants.

We have explained

> "that the erroneous grant of a directed verdict on a claim does not categorically require reversal; if the verdict on claims that were submitted to the jury demonstrates that the jury necessarily would have rejected one or more

elements of the claim that was taken away from it, then we will not deem the erroneous grant of a directed verdict to have substantially affected the plaintiff's rights under ORS 19.415(2)."

*Yoshida's Inc. v. Dunn Carney Allen Higgens & Tongue*, 272 Or App 436, 458, 356 P3d 121 (2015), *rev den*, 358 Or 794 (2016) (internal quotation marks and brackets omitted). In *Piazza*, we similarly recognized that, "where a jury verdict breaks the causal connection for a claim on which the court granted a directed verdict, any error in granting the directed verdict [is] harmless." 261 Or App at 438-39 (citing *A. G. v. Guitron*, 238 Or App 223, 234, 241 P3d 1188 (2010), *aff'd*, 351 Or 465, 268 P3d 589 (2011)). Plaintiff's legal claim that she owned property to the midpoint of Beaver Valley Road is entirely dependent upon plaintiff's factual claim that she owned the property that abuts that road to the north. As explained below, the jury necessarily found that plaintiff did not own any property that abuts the road to the north, which breaks the causal connection for plaintiff's claim of error on appeal, rendering any such error harmless.

Here, the jury answered "NO" to the question, "Did the defendants cut down trees on property owned by plaintiff?" As set out above, it was undisputed at trial that defendants did, in fact, cut down trees to the fence line, which undisputedly lay north of the road and approximately ran along the section line between sections 22 and 15. Thus, a reasonable jury could only have answered "NO" to the posed question if it concluded, as a factual matter, that plaintiff did not own any of that logged property.

It is true that the jury was presented with two theories as to why plaintiff did not own that property: (1) plaintiff did not in fact obtain ownership to property through their quitclaim deeds or (2) the landowner defendants obtained title to that property through adverse possession. The verdict form did not specify what theory the jury relied upon. However, that does not matter for our purposes, because, under either theory, plaintiff could not, as a legal matter, own any of the property in the Beaver Valley Road based on the jury's factual finding that plaintiff did not own any of the logged property.

Under the first theory, if the jury found that plaintiff did not actually obtain any property in the quitclaim deeds, then plaintiff also did not obtain property to the road midpoint under ORS 93.310(4) that could have been conveyed with that deeded property. Under the second theory, the landowner defendants, by obtaining title to plaintiff's property abutting the road through adverse possession, also obtained any right to half of the road, because that interest would have transferred with the abutting property under ORS 93.310(4). That is, plaintiff's claimed interest in the road is not a property interest that can be separated from plaintiff's claimed interest in the property abutting the road, and, as such would have transferred to the landowner defendants once they perfected title to the abutting property through adverse possession. *See Evans v. Hogue*, 296 Or 745, 754-55, 681 P2d 1133 (1984) ("[I]f the land is in the possession of another and if the possessors' occupation of the land meets the requirements for adverse possession, that is, if the occupiers' possession is sufficiently conspicuous so that the true owner should have asserted his rights, the title holders' nonassertion of rights will result in eliminating his interest in the property and transferring that interest to the possessor. The adverse possessor then acquires perfect title to the land." (Internal quotation marks and footnote omitted.)). Thus, under either theory presented to the jury that could have supported the jury's factual finding that plaintiff did not own any of the logged property, as a matter of law, also requires the conclusion that plaintiff could not own any of the Beaver Valley Road, as alleged by plaintiff. Because the jury's factual finding "breaks the causal connection" to plaintiff's legal claim on appeal to half of the road, even if the trial court erred in granting defendants a directed verdict on that issue, that error was harmless.

Plaintiff asserts that the error was not harmless, because it allowed the logger defendants to minimize her damages in closing arguments and to discredit testimony of her surveyor about the size of her property that included half of the road as part of plaintiff's property. We have reviewed the closing arguments and conclude that they do not render any error by the trial court reversible, in light of the jury's finding that plaintiff did not own any of the logged property.

The first and most fundamental question the jury had to answer was whether plaintiff owned any of the logged property. That question was separate from whether plaintiff owned any of the road, because, as claimed by plaintiff, that was solely a question of law based on the Beaver Homes plat map, the parties' respective deeds, and operation of law under ORS 93.310(4); it was never a factual question for the jury to decide. *See Fossi*, 271 Or at 615 ("[W]hen the evidence of the conveying party's intention is the language in the conveyance, the party's intention is not to be decided as a question of fact."). In that light, defendants' closing arguments, which did not rely on the trial court's ruling to argue that plaintiff did not own *any* of the logged property, but rather discussed the *evidence* adduced at trial on that point to argue that plaintiff had not met her burden to prove timber trespass, did not render any error by the court reversible. Accordingly, we reject plaintiff's first assignment of error.

We turn to plaintiff's second assignment of error. Plaintiff assigns error to the trial court's denial of plaintiff's motion for directed verdict against defendants' adverse possession defenses and counterclaim. As noted above, defendants asserted as either affirmative defenses or a counterclaim that the landowner defendants had adversely possessed plaintiff's property that was logged. Plaintiff moved for directed verdict and argued that, as to the disputed Beaver Valley Road, if the road was public property, the landowner defendants could not adversely possess either it or the plaintiff's property that was clearly on the north side of the road. The landowner defendants argued that they owned the underlying title to the road, that they did not need to adversely possess that road, and that they were not claiming to have adversely possessed the road.[3] Instead, they claimed that their adverse possession claims were directed solely at the plaintiff's property that was *north* of the road and south of the section line in the original Beaver

---

[3] We note that defendants, in moving for directed verdict that the road was not the boundary, argued that the landowner defendants' ownership of the road was one of several possibilities. In arguing against plaintiff's directed verdict motion, defendants more specifically argued that the landowner defendants owned the road. Ultimately, the parties do not address the legal significance, if any, of this possible inconsistency in that defense. We therefore assume that it has no bearing on our analysis.

Homes plat. The trial court denied plaintiff's directed verdict motion and further concluded that there was some evidence that the landowner defendants had adversely possessed plaintiff's two forested lots north of the road.

The parties essentially reprise their arguments from the trial court. Plaintiff narrows her argument on appeal to contend, more specifically, that the landowner defendants could not adversely possess Beaver Valley Road to the extent that it is public property owned by the county. We reject plaintiff's argument because we agree with defendants' characterization of the record before the trial court at the time plaintiff moved for directed verdict. Plaintiff moved for a directed verdict contending, in part, that the landowner defendants could not adversely possess the road if it was public property. Among other things, defendants contended that they were only asserting an adverse possession defense against plaintiff's property that was *north* of the road and were not asking the jury to conclude that they adversely possessed the road or any public property.

Defendants presented evidence in support of that adverse possession defense and counterclaim. The trial court did not err in denying plaintiff's motion to direct a verdict that defendants could not adversely possess the road, because defendants did not seek adverse possession of the road.[4]

We turn to plaintiff's third and final assignment of error. Plaintiff contends that the trial court erred in instructing the jury that, if it found defendants committed casual or involuntary trespass, the court would double any

---

[4] Plaintiff argues that it would be inconsistent for the landowner defendants to contend that they adversely possessed plaintiff's land but not the county road, because both plaintiff's property and the road fell within the fence constructed by the landowner defendants. We do not have to resolve that claimed inconsistency. Defendants may define the extent of their adverse possession defenses or counterclaim just as plaintiff may define the extent of her claim. *See Hinchman v. UC Market, LLC*, 270 Or App 561, 570 n 5, 348 P3d 328 (2015) (stating, in another context, that "[a] plaintiff is the master of her own claim"); *Vukanovich v. Kine*, 268 Or App 623, 638, 342 P3d 1075, *adh'd to as modified on recons*, 271 Or App 133, 349 P3d 567 (2015) (rejecting the defendant's argument regarding the plaintiff's complaint because it was predicated on a claim that the plaintiff did not pursue). Defendants did not seek to adversely possess the road or seek any adverse possession rights against the county, which was not even a party to the litigation.

damages that the jury awarded. Similarly, plaintiff contends that the court erred when it instructed the jury that, if it found defendants committed willful trespass, the court would triple any damages awarded by the jury. Plaintiff contends that the jury's role is only to decide the facts, and that it was irrelevant and prejudicial for the court to inform the jury of the additional legal consequences of their factual findings, namely the application of statutes multiplying damages in timber trespass claims. Thus, plaintiff does not contend that the instruction to the jury was an incorrect statement of law, but that it was an unnecessary and prejudicial one. *See* ORS 105.815(1) (providing that, in cases of casual or involuntary trespass, the "judgment shall be given for double damages"); ORS 105.810(1) (providing, in cases of willful trespass, the judgment "shall be given for treble the amount of damages claimed, or assessed for the trespass").

Plaintiff does not cite any Oregon case law that addresses whether a trial court errs in instructing a jury regarding so-called damage multipliers provided by statute. Instead, plaintiff relies on case law from other jurisdictions primarily involving antitrust disputes. Defendants contend that there was no error, and that, if there was any error, it was harmless.

We conclude that, even assuming that the trial court erred in informing the jury about the damage multipliers that could be applied in a timber trespass claim, any such error was harmless under the particular facts of this case. We may not reverse a judgment unless the trial court's error substantially affected plaintiff's rights. *See* ORS 19.415(2) (stating that "[n]o judgment shall be reversed or modified except for error substantially affecting the rights of a party"). To require reversal under ORS 19.415(2), "an error must—in an important or essential manner—have materially or detrimentally influenced a party's rights; it is insufficient to speculate that the error might have changed the outcome of the case." *Purdy v. Deere and Company*, 355 Or 204, 225, 324 P3d 455 (2014). Further, plaintiff, as the party claiming error, bears the burden to "demonstrate that the error had the required prejudicial effect." *Id*. We conclude that plaintiff has not met her burden to show, based on this particular record, that any error materially and

detrimentally influenced her rights. In other words, it would require too much speculation to conclude that any error might have changed the outcome of this case.

The landowner defendants' closing argument was based on their contention that, to the extent that the jury even found that plaintiff had purchased the slivers of lots just north of the landowner defendants' property, those defendants had adversely possessed the property. Defendants asked the jury to find that defendants did not cut any trees on plaintiff's land and, on that basis, issue a defense verdict. As noted above, the jury answered only the first fact question in the special verdict form, which was, "Did the defendants cut down trees on property owned by plaintiff?" The jury answered "NO." The jury then followed the subsequent instruction that it was not to answer any further questions because its verdict was for the defense. The jury did not reach any additional questions regarding liability in the verdict form, such as whether defendants "willfully" or "casually or involuntarily" cut down trees on plaintiff's property, or whether plaintiff suffered any damages as a result. The jury decided the case based solely on the factual proposition that defendants never cut down any trees on plaintiff's property. On this record, we cannot conclude that the jury's knowledge of the potential for a damage multiplier substantially affected its factual decision that defendants had not cut down trees that were located on plaintiff's property. To conclude otherwise would require too much speculation.[5]

In sum, we reject plaintiff's first assignment of error and conclude that, even assuming the trial court erred in granting defendants' motion for directed verdict and instructing the jury that plaintiff had no right to the trees on the northern half of the road, any error was harmless on this record. We reject plaintiff's second assignment of error

---

[5] We acknowledge that there may be cases where this type of instruction may cause jurors to pause to consider whether their decision on liability or, more likely, damages could lead, despite the requirements of the law, to a "windfall" recovery for a plaintiff if a damages multiplier is later applied by the court. That could unfairly affect a plaintiff's case. However, here, plaintiff has not met her burden to show by more than speculation that the jury instruction substantially affected her rights when the jury specifically found that defendants never even cut trees on plaintiff's property.

and conclude that the trial court did not err in denying plaintiff's motion for directed verdict against defendants' adverse possession defenses and counterclaim because defendants did not seek to adversely possess the disputed road. We also reject plaintiff's third assignment of error and conclude that, even assuming that the trial court erred in informing the jury about the existence of damage multipliers, any error was harmless in light of the jury's special verdict.

Affirmed.