Argued and submitted February 23, a peremptory writ of mandamus shall issue July 8, 2022

Jessica DAHLTON,
as Personal Representative of
the Estate of Holland Dahlton, Deceased,
*Plaintiff-Relator,*
*v.*

James KYSER, M. D.
and Pediatric Cardiology Center
of Oregon, P.C.,
*Defendants,*
*and*

Susan ALLEN, N. D.,
dba Triangolo Family Clinic,
*Defendant-Adverse Party.*

(CC 19CV36397) (SC S068871)

513 P3d 598

Relator, the personal representative of the decedent, brought a wrongful death action seeking, *inter alia*, damages on behalf of the statutory beneficiaries for the loss of decedent's society and companionship. Pursuant to ORCP 44 C, adverse party requested disclosure of otherwise-privileged medical records, and relator objected to disclosure of some records on the ground that they relate only to the beneficiaries' medical care regarding the loss of society and companionship, which is outside the scope of ORCP 44 C. The trial court ordered disclosure. *Held*: ORCP 44 C governs disclosure of medical records in cases involving a claim for damages "for injuries to the party or to a person in the custody or under the legal control of a party." A statutory beneficiary in a wrongful death action is not, by virtue of that status, a "party" to the action within the meaning of ORCP 44 C, nor are beneficiaries, as a class, in the custody or under the legal control of a party. Thus, records of medical care received by a beneficiary that do not relate to the injury suffered by decedent are not subject to the rule.

A peremptory writ of mandamus shall issue.

En Banc

Original proceeding in mandamus.*

_____
* On petition for writ of mandamus from an order of Multnomah County Circuit Court, Michael A. Greenlick, Judge.

Robert H. Beatty-Walters, Law Office of Robert Beatty-Walters, Portland, argued the cause on behalf of plaintiff-relator. Lisa T. Hunt, Law Office of Lisa T. Hunt, LLC, Lake Oswego, filed the brief. Also on the brief was Robert H. Beatty-Walters.

J. Aaron Landau, Harrang Long Gary Rudnick P.C., Eugene, argued the cause and filed the brief for defendant-adverse party. Also on the brief were Adina Matasaru, and Iayesha Smith, Harrang Long Gary Rudnick P.C., Portland.

Rhett G. Fraser, Huegli Fraser P.C., Portland, filed the brief in support of the petition for mandamus for *amicus curiae* Oregon Trial Lawyers Association.

GARRETT, J.

A peremptory writ of mandamus shall issue.

**GARRETT, J.**

ORCP 44 C provides that, "[i]n a civil action where a claim is made for damages for injuries to the party," the claimant, upon request, must disclose to the adverse party certain medical records "relating to injuries for which recovery is sought." That rule creates an exception to the privileges that otherwise might protect such records from disclosure.

The question in this mandamus proceeding is how that rule applies in an action for wrongful death. Relator—the decedent's personal representative—brought a wrongful death claim under ORS 30.020 that seeks, among other things, damages on behalf of the statutory beneficiaries for their loss of decedent's society and companionship. The trial court entered an order under ORCP 44 C requiring the beneficiaries to produce records of their medical and psychological care that is relevant to those alleged damages. Relator filed a petition for an alternative writ of mandamus, which this court allowed, arguing that the beneficiaries' records are privileged and that ORCP 44 C cannot require disclosure because that rule applies to claims made for "damages for injuries to the party," and the beneficiaries are not parties. For the reasons that follow, we conclude that the trial court's ruling was in error. As a matter of law, the statutory beneficiaries of a wrongful death claim are not, by virtue of that status, "parties" who can be compelled under ORCP 44 C to provide privileged records.

## I.　BACKGROUND

Decedent was born prematurely and had complex medical issues, including heart defects.[1] When he was five months old, he died from cardiac arrest resulting from diffuse bacterial pericarditis and pericardial effusion. Following decedent's death, relator—his mother, acting as decedent's personal representative—filed a wrongful death action under ORS 30.020 against several defendants, alleging that decedent's death was caused by negligent medical treatment. Relator seeks both economic damages and, as relevant to the issue before this court, $800,000 in

---

[1] We take the historical facts in this case as alleged in the complaint.

noneconomic damages for the loss of decedent's society and companionship.

The discovery dispute in this case involves six requests for production (RFPs) served by the adverse party, one of the physician defendants. RFPs 1-3 generally request decedent's medical records, but they include phrasing that, as interpreted by relator, might reach more broadly to encompass medical records of relator herself that are not pertinent to decedent's injuries. For example, RFP 1 seeks information for the time period "up to and including trial." In the motion to compel, adverse party characterized the records requested in RFPs 1-3 as "[p]renatal or postnatal medical records for [decedent's mother] relating to the health or development of [decedent]."

The second three RFPs, RFPs 9-11, are specifically directed toward medical care received by the beneficiaries. RFP 9 requests:

> "All existing medical records and reports of all health care practitioners or experts who have examined [the decedent's] beneficiaries related to their claims, for purposes of litigation as well as for treatment for any of the same or similar injuries, conditions, and symptoms, or for the same body parts as those allegedly injured pursuant to plaintiff's complaint, including, but not limited to: loss of society and companionship, and all related symptoms, including any mental or physical suffering; age; health; life expectancy.

> "This request is for records before the alleged incident to the present and up to and including trial. This request includes records for conditions or treatment that could result in similar symptoms or injuries, including, but not limited to any records pertaining to alcohol or drug use or addiction, and other diseases or health problems."

RFP 10 requests "any and all psychological, psychiatric and/or counseling records for [the decedent's] beneficiaries, including marital or couples counseling." RFP 11 requests:

> "[A]ny and all prescription records for beneficiaries reflecting medications to treat symptoms and conditions relevant to alleged damages, or that may result in the same symptoms. Plaintiff may produce reports from the beneficiaries' pharmacies listing prescriptions obtained by date, dosage

level, quantity, number of refills, date filled, cost and pre-
scribing physician."

In sum, RFPs 1-3 request information pertaining to dece-
dent's medical history. RFPs 9-11 request records of the ben-
eficiaries' own care and treatment.

Relator objected to all six requests insofar as they
requested records pertaining to the beneficiaries' medical
care and counseling. Relator asserted that those records are
protected from disclosure by the physician-patient privilege,
OEC 504-1, and the psychotherapist-patient privilege, OEC
504.

Adverse party moved to compel production, arguing
that the records are discoverable under ORCP 44 C, which
provides an exception to the doctor-patient privilege for
records "relating to injuries for which recovery is sought"
when "a claim is made for damages for injuries to the party."
Adverse party argued that the beneficiaries are "parties to
this action," that the loss of decedent's society and compan-
ionship is an "injur[y] for which recovery is sought" under
ORCP 44 C, and that the beneficiaries' health and counsel-
ing records are related to that injury.

Relator disagreed. As to the request for relator's pre-
natal and postnatal records (RFPs 1-3), relator noted that
she had "produced every extant medical record of the dece-
dent *** from his birth to his death, and after (autopsy)."
She also had produced two categories of her own records:
a prenatal ultrasound and postnatal lactation consultation
records. She argued that all of the other records requested
by the six RFPs were privileged records solely concerning
the beneficiaries' care, and thus not within the scope of
ORCP 44 C. With reference to the terms of that rule, rela-
tor reasoned that (1) the statutory beneficiaries in wrongful
death actions are not parties within the meaning of ORCP
44 C; (2) the "injury" for purposes of the rule is solely the
decedent's death, and the beneficiaries' medical and psy-
chological records are not discoverable because they are
not "related to the injury for which recovery is sought"; and
(3) the beneficiaries could not be required to provide depo-
sition testimony regarding privileged communications with
their treatment providers.

The trial court ordered the production of all records requested by the six RFPs. The court explained that ORCP 44 C refers to "injuries to the party" and that the beneficiaries "are parties" because, "[i]n a broad sense, they suffered injuries from loss of companionship and society." However, the court asked relator to submit the materials for *in camera* review with a privilege log that identified the parts of the record that relator believed were beyond the scope of the claim. The court also described how it intended to review the materials:

> "[I]f there are \*\*\* serious illnesses that affect [relator's] health, I probably would give that to [the adverse party]. But, if it's \*\*\* just a normal kind of logical exam, or something like that, I probably would not give that to [the adverse party]. Same with the psychological records. If they are records \*\*\* regarding the trauma she suffered as a result of \*\*\* her son passing away, I probably would give those records. But, if it's \*\*\* something very tangential, I probably would not give those records."

Relator moved for reconsideration, which the trial court denied in a letter opinion. It entered an order granting adverse party's motion to compel and requiring the beneficiaries to answer deposition questions relating to their treatment. However, the court clarified that the beneficiaries "shall not be required to testify regarding privileged communications with their providers." Aware of relator's intent to file a mandamus petition, the court entered a separate order staying the case in its entirety pending the resolution of that petition. On that mandamus petition, we issued an alternative writ. The trial court did not vacate its decision, and we now issue a peremptory writ.

## II.   ANALYSIS

Resolving the dispute in this case requires us to apply ORCP 44 C in the context of the wrongful death statute.

ORCP 44 C provides, as follows:

> "In a civil action where a claim is made for damages for injuries to the party or to a person in the custody or under the legal control of a party, upon the request of the party against whom the claim is pending, the claimant shall

deliver to the requesting party a copy of all written reports and existing notations of any examinations relating to injuries for which recovery is sought unless the claimant shows inability to comply."

The rule is readily applied in a typical personal injury case, where the injured person, the claimant, and the person bringing the action are one and the same. In the wrongful death context, the rule's application is less straightforward. Relator and adverse party dispute the application of the rule to this case in several respects. They agree that this is "a civil action where a claim is made for damages for injuries to the party," but they disagree as to what claim and what injuries are at issue, and they disagree as to the meaning of "party." Relator argues that the beneficiaries are not "parties" to the action and that this case concerns a sole "claim"—of wrongful death—for a single "injury"—the death of the decedent. Thus, in relator's view, the "injur[y] for which recovery is sought" is the death of the decedent, and ORCP 44 C therefore requires the disclosure of medical information concerning that injury, but it does not require the disclosure of information about the *beneficiaries*' medical care because they are not "parties" and have not suffered an "injury" within the meaning of the rule.

Adverse party counters that, in the wrongful death context, the statutory beneficiaries are the "real parties in interest" because they will receive any compensation as a result of the claim, and thus, ORCP 44 C applies to them. Adverse party further argues that the claim for loss of society and companionship seeks recovery for injuries *to* the beneficiaries, and that medical records that relate to that injury, such as records of psychological treatment, are discoverable under ORCP 44 C. Finally, adverse party argues that requiring disclosure in this circumstance is necessary to further the policy rationale of the rule, because the beneficiaries' medical and psychological records are relevant to proving damages for the claimed loss of society and companionship.[2]

---

[2] Adverse party also contends that some of relator's arguments are not properly before this court because they were not timely raised below. Specifically, adverse party contends that, in the proceedings before the trial court, relator focused only on the nature of "injury" and did not argue that the beneficiaries are

We apply our usual method of statutory interpretation to interpret the rules of civil procedure with the goal of discerning the intent of the body that adopted the rule. *A. G. v. Guitron*, 351 Or 465, 471, 268 P3d 589 (2011); *Waddill v. Anchor Hocking, Inc.*, 330 Or 376, 382-83 nn 2 & 3, 8 P3d 200 (2000). ORCP 44 was promulgated by the Council on Court Procedures (the "Council") for submission to the 1979 legislature, which adopted the rule without amendment. *See* Or Laws 1979, ch 284. The legislature has not since amended the rule; thus, the Council's original intent is that which we seek to understand. To do so, we look to the text, context, and any helpful legislative history. *State v. Gaines*, 346 Or 160, 171-72, 206 P3d 1042 (2009).

A.   *Who is a "Party" for Purposes of ORCP 44 C*

The question in this case is whether ORCP 44 C can compel the production of privileged records pertaining to medical care received by the statutory beneficiaries in a wrongful death action. We start with the text of the rule. To interpret legal terms like "party," we consult legal dictionaries. *DCBS v. Muliro*, 359 Or 736, 746, 380 P3d 270 (2016) ("When a term is a legal one, we look to its established legal meaning as revealed by, for starters at least, legal dictionaries." (Internal quotation marks omitted.)); *id.* (citing *Black's Law Dictionary* to define "notice"). Because ORCP 44 C was promulgated by the Council in December 1978 and adopted by the legislature in 1979 (and its predecessor statutes were enacted in 1973), we look to the legal definition of "party" at that time. In the 1968 edition of *Black's Law Dictionary*, "party" was defined as

> "[a] person concerned or having or taking part in any affair, matter, transaction, or proceeding, considered individually. See Parties.
>
> "'Party' is a technical word, and has a precise meaning in legal parlance. By it is understood he or they by or against whom a suit is brought, whether in law or equity; the party plaintiff or defendant, whether

not "parties." However, the record reflects that the arguments about the correct interpretations of various terms within ORCP 44 C were interrelated. Moreover, adverse party expressly took the position below that that the beneficiaries are "parties to this action," and the trial court agreed with that position. We conclude that the issue is adequately preserved for our review.

> composed of one or more individuals, and whether natural or legal persons, (they are parties in the writ, and parties on the record;) and all others who may be affected by the suit, indirectly or consequentially, are persons interested, but not parties."

*Black's Law Dictionary* 1278 (revised 4th ed 1968) (internal citations omitted). In the 1979 edition of *Black's*, the editors added to the definition of "party":

> "A person concerned or having or taking part in any affair, matter, transaction, or proceeding, considered individually. A 'party' to an action is a person whose name is designated on record as plaintiff or defendant. Term, in general, means one having right to control proceedings, to make defense, to adduce and cross-examine witnesses, and to appeal from judgment.

> "'Party' is a technical word having a precise meaning in legal parlance; it refers to those by or against whom a legal suit is brought, whether in law or in equity, the party plaintiff or defendant, whether composed of one or more individuals and whether natural or legal persons; all others who may be affected by the suit, indirectly or consequently, are persons interested but not parties."

*Black's Law Dictionary* 1010 (5th ed 1979) (internal citations omitted);[3] *see also Ballentine's Law Dictionary* 919 (3d ed

---

[3] The current edition of *Black's* uses a different description to define "party," and that description is consistent with the 1968 and 1979 descriptions:

> "2. One by or against whom a lawsuit is brought; anyone who both is directly interested in a lawsuit and has a right to control the proceedings, make a defense, or appeal from an adverse judgment; litigant <a party to the lawsuit>. For purposes of *res judicata*, a party to a lawsuit is a person who has been named as a party and has a right to control the lawsuit either personally, or, if not fully competent, through someone appointed to protect the person's interests. In law, all nonparties are known as 'strangers' to the lawsuit.

> "Those persons who institute actions for the recovery of their rights, or the redress of their wrongs, and those against whom the actions are instituted, are the *parties* to the actions. The former are, in actions at common law, called plaintiffs, and the latter, defendants. In real actions, the parties are styled demandant and tenant; in appeals, appellant and respondent; in admiralty practice, libellant and respondent; in equity, plaintiff (or complainant) and defendant; on writs of error, plaintiff in error and defendant in error; on certioraris, relator and defendant; in criminal proceedings, the king, or the people, or state, or commonwealth, and prisoner; (the person on whose complaint the proceedings were instituted being styled the prosecutor;) in the Scotch law, pursuer and defender; and in the civil law, actor and *reus*."

1969) (describing "party" as "[o]ne of the opposing litigants in a judicial proceeding—a person seeking to establish a right").

As those definitions illustrate, although "party" can be understood broadly to refer to any person "concerned" with an "affair, matter, transaction, or proceeding," it carries a more specific meaning in the context of an "action" or a "suit," *i.e.*, litigation. Not everyone who is "concerned" with, or will be affected by, the outcome of a case is a party. Rather, "party" in that context refers to a person who brings or defends against the action—one with a "right to control the proceedings." Given the choice between a broad, general meaning and a more specific, technical meaning, we consider the context in which the term "party" is used. ORCP 44 is a rule of civil procedure addressed to the exchange of information during litigation, including by order of the trial court. That technical context suggests that, in drafting the rule, the Council had the specific, technical meaning of "party" in mind.

Additional context for understanding ORCP 44 C includes the other subsections of the same rule, as well as the statutes that preceded the adoption of ORCP 44. *See State v. Ziska/Garza*, 355 Or 799, 806, 334 P3d 964 (2014) ("Analysis of the context of a statute may include prior versions of the statute[.]"); *Force v. Dept. of Rev.*, 350 Or 179, 188, 252 P3d 306 (2011) ("'[C]ontext' includes, among other things, other parts of the statute at issue.").

ORCP 44, in its entirety, was enacted to replace existing statutes governing court-ordered medical examinations and disclosure of medical records in civil cases. ORCP 44 A provides for court-ordered physical or mental examinations. Specifically,

"[w]hen the mental or physical condition or the blood relationship of a party, or of an agent, employee, or person in the custody or under the legal control of a party (including the spouse of a party in an action to recover for injury to the spouse), is in controversy, the court may order the

---

*Black's Law Dictionary* 1350 (11th ed 2019) (first italics added; second and third italics in original; internal citations and quotation marks omitted) (adding the *res judicata* text in 2004 (8th ed) and the second paragraph in 2014 (10th ed)).

> party to submit to a physical or mental examination by a physician or a mental examination by a psychologist or to produce for examination the person in such party's custody or legal control. The order may be made only on motion for good cause shown and upon notice to the person to be examined and to all parties and shall specify the time, place, manner, conditions, and scope of the examination and the person or persons by whom it is to be made."

ORCP 44 A. ORCP 44 B requires the "party causing the examination to be made" to deliver the medical report from the ORCP 44 A examination to the "party against whom an [ORCP 44 A] order is made" or "the person examined" if the party or person requests the report. ORCP 44 B also requires the party or person who was examined to then provide "a like report of any examination" to the party who caused the examination to be made, if the report is requested. In other words, if, on a defendant's motion, the court orders a plaintiff to undergo a medical examination regarding the physical condition that is in controversy, the resulting medical report belongs to the defendant, who is required by ORCP 44 B to provide a copy to the plaintiff upon request. ORCP 44 B requires the plaintiff to deliver "like reports" to the defendant when requested. ORCP 44 C extends the plaintiff's obligation—upon defendant's request, the plaintiff must disclose medical reports related to the injury to the defendant during discovery regardless of whether the plaintiff was subject to a court-ordered medical examination.

Notably, ORCP 44 A provides for a court-ordered examination only of "the party" or of "the person in such party's custody or legal control." Similarly, ORCP 44 B refers only to "the party against whom an order is made" and "the party causing the examination to be made." In other words, those subsections of the rule make no provision for a court-ordered examination or disclosure of records by anyone who is not either a party to the litigation or a person who is in the "custody or legal control" of a party.

That understanding of ORCP 44 A and B provides further support for the conclusion suggested by the text of ORCP 44 C: Throughout ORCP 44, "party" means a person with the authority to control the litigation. "Party" is used

consistently in ORCP 44 A, B, and C to describe the technical processes of providing medical information during discovery. ORCP 44 provides for an exchange of medical reports in the context of court-ordered examinations, which can be ordered only against a litigant (or a spouse in a consortium case, as discussed below). ORCP 44 A, B. Nothing indicates that ORCP 44 C should apply more broadly to anyone with an interest, financial or otherwise, in the action—rather, the context indicates that the parts of ORCP 44 work together to create a comprehensive discovery scheme that provides narrow exceptions to the statutory privileges affecting those directly involved in controlling the litigation.

Finally, the legislative history also provides some insight into what the Council intended. ORCP 44 was enacted in 1979 to further develop discovery rules on court-ordered examinations and independent medical reports that the legislature had first created in 1973. *A. G.*, 351 Or at 480-81; *see former* ORS 44.610 (1973), *former* ORS 44.620 (1973), *repealed by* Or Laws 1979, ch 284, § 199. As we explained in *A.G.*, those earlier statutes provided that plaintiffs had to disclose, upon request, doctor's reports, including chart notations, in personal injury cases. *See A. G.*, 351 Or at 476-78. The legislature had the objective of promoting disclosure of information about the nature and extent of a person's injuries at an early stage of the litigation, thus enabling earlier settlements and reducing the need to involve medical professionals in lawsuits. *See* Minutes, House Committee on Judiciary, HB 2101, Feb 12, 1973.

The legislative history indicates that those statutes were simply recast as a rule of procedure when the Council included discovery rules in its promulgation of the Oregon Rules of Civil Procedure. We have previously explained that the rule was "'expressly designed to create a duty on the part of plaintiffs in personal injury cases to furnish medical reports *apart from any exchange with the defendant or any court-ordered examination*.'" *A. G.*, 351 Or at 481 (quoting Comment, Discovery Committee Draft Rules, Council on Court Procedures 58, Apr 1, 1978 (emphasis in *A. G.*)). In examining that text, we noted that ORCP 44 C encompasses medical reports by treating physicians and those made in preparation for litigation. *Id.* at 484. We also acknowledged

that that interpretation may well require plaintiffs "to dis-
close reports of litigation experts that, in the absence of
ORCP 44 C, would be protected by the physician-patient,
psychotherapist-patient, or attorney-client privileges." *Id.* at
484.

The comments that accompanied the promulgation
of ORCP 44 A are particularly illustrative of the Council's
intent. With respect to whether that rule could apply to non-
parties, the Council noted:

> "If the rule required a non-party to submit to a physical
> examination in an action brought by someone else and sub-
> jected the non-party to contempt for refusal, there would
> be some constitutional problems. If the rule required the
> party to produce someone who could not be produced, the
> rule would be of questionable validity. The order is directed
> to a party and can only require the party to produce a per-
> son in custody or control. Thus, if the agency or employment
> relationship is terminated or a child has reached majority,
> no order can be entered. Further, the only sanction avail-
> able under ORCP 46 B.(2)(e) is against the party and then
> only when the party could have produced a person in cus-
> tody or under control. Thus if a child or employee refuses
> to submit to examination, despite a direction to do so from
> the party, neither the party nor the non-party can be held
> in contempt."

ORCP 44 Draft, Council on Court Procedures 3, Mar 8, 1979
(underscoring in original). The Council also explained that
"one situation not clearly covered is a loss of consortium
case." It continued:

> "Wright and Miller say:

>> "'It is not quite so clear, but it would seem that when
>> a husband has a substantive right to recover for inju-
>> ries to his wife, the wife is under his legal control for
>> this purpose and he can be ordered to produce her for a
>> physical examination.'

> "There is some doubt on this, and no case has so held.
> At least, one state court has held that, although the rule
> does not specifically cover the situation, a court has inher-
> ent power to order a wife to submit to a physical exam-
> ination in a loss of consortium case. *St. Louis Public Serv.
> Co. v. McMullan*, 297 SW2d 431 (1957). The Oregon courts

have recognized inherent court power to order physical examinations, including possibly blood tests of a child in a divorce case, but have never dealt with the consortium situation. *Parsons v. Parsons*, 197 Or 420[, 253 P2d 914] (1953)."

*Id*. at 3-4. Thus, the Council noted potential "constitutional problems" with a rule that purported to require a nonparty to submit to a physical examination, and it clarified that "[t]he order is directed to a party and can only require the party to produce a person in custody or control." *Id*. at 3 (underscoring in original). That clarification is consistent with understanding "party" in the technical sense as a person with the right to control the litigation, as opposed to any person with an interest in the outcome.

Moreover, with regard to loss-of-consortium cases, the Council expressed doubt as to whether courts would view one spouse as being under "the control" of the other; thus, the Council added the parenthetical: "(including the spouse of a party in an action to recover for injury to the spouse)." *Id*. at 2, 4. As a result of that change, the injured spouse, a nonparty, can be ordered to submit to a medical examination in a loss-of-consortium case. The Council did not make any changes to the text of ORCP 44 C after that discussion of ORCP 44 A. The decision to amend ORCP 44 A to clarify that, in one specific type of case, a nonparty—the spouse— *can* be required to submit to examination indicates that the Council understood that the rule ordinarily would not apply to anyone other than the person in control of the proceedings (or a person under that person's control). Because the two subparts of the rule were enacted at the same time and use many of the same terms, it is logical to further infer that the Council had the same general understanding for ORCP 44 C that it did for ORCP 44 A.

Taking the text, context, and legislative history of ORCP 44 C together, we construe "party" in ORCP 44 C to mean a litigant who has the authority to control the proceedings. A person who benefits from the proceedings, directly or indirectly, but does not have the right to control the proceedings, is simply a "person[] interested." *Black's* at 1278 (revised 4th ed 1968).

B.  *The "Parties" in a Wrongful Death Action*

Next, we must determine whether statutory bene-
ficiaries are, by virtue of that status, parties in a wrongful
death action for purposes of ORCP 44 C. That requires a
brief analysis of the wrongful death statute, ORS 30.020.
The statute was originally enacted in Oregon in 1862.
General Laws of Oregon, Civ Code, ch IV, title VI, § 367,
p 241 (Deady 1845-1864). It is based on Lord Campbell's Act,
an English statute that created a cause of action for wrong-
ful death where one did not exist at common law. *Goheen
v. General Motors Corp.*, 263 Or 145, 152-53, 502 P2d 223
(1972).

ORS 30.020(1) allows "the personal representative
of the decedent" to "maintain an action against the wrong-
doer, if the decedent might have maintained an action, had
the decedent lived, against the wrongdoer for an injury done
by the same act or omission." The personal representative
brings the action

> "for the benefit of the decedent's surviving spouse, surviv-
> ing children, surviving parents and other individuals, if
> any, who under the law of intestate succession of the state
> of the decedent's domicile would be entitled to inherit the
> personal property of the decedent, and for the benefit of any
> stepchild or stepparent whether that stepchild or steppar-
> ent would be entitled to inherit the personal property of the
> decedent or not."

*Id.*

The statute specifically authorizes the recovery of
damages for several enumerated purposes, including dam-
ages that would have "compensated the decedent for dis-
ability, pain, suffering and loss of income during the period
between injury to the decedent and the decedent's death,"
ORS 30.020(2)(b), and damages for "pecuniary loss to the
decedent's estate," ORS 30.020(2)(c).

As the legislature amended the statute over time,
it also added provisions allowing recovery for the loss that
certain other people suffer as a result of a wrongful death.
*E.g.*, Or Laws 1973, ch 718, § 2. ORS 30.020(2)(d) now allows
for the recovery of damages to compensate "the decedent's

spouse, children, stepchildren, stepparents and parents for pecuniary loss and for loss of the society, companionship and services of the decedent."

The personal representative is the only person authorized to "maintain" the lawsuit. ORS 30.020(1); *see Kilminster v. Day Management Corp.*, 323 Or 618, 627, 919 P2d 474 (1996) ("Because the legislature has chosen not to provide decedent's parents with a wrongful death action based on a theory of negligence, and because Oregon has no common law action for wrongful death, [the parents] have suffered no legally cognizable injury to their person, property, or reputation." (Internal citation omitted.)). The personal representative owes a fiduciary duty to the beneficiaries and the estate. *Hughes v. White*, 289 Or 13, 18, 609 P2d 365 (1980). The personal representative is the individual who has control over litigation decisions—whether to settle, what claims to bring, and how to proceed with litigation; the beneficiaries have no role in the litigation process. *See* ORS 30.020(1); *Ross v. Robinson*, 169 Or 293, 314, 316, 128 P2d 956 (1942) (on rehearing) ("[A]n action brought for damages caused by the wrongful act or omission of another must be instituted by the personal representative of the deceased for any beneficiary."). The personal representative is appointed by the court and is most commonly a surviving family member. ORS 113.085(1) (listing the preferred individuals who may be appointed as personal representative and preferring a distributee of the estate over a nondistributee of the estate). Thus, while the personal representative is often also a statutory beneficiary, the statutory scheme treats those roles as legally distinct for purposes of litigation.

In light of our earlier discussion of "party," the provision in ORS 30.020(1) that only the "personal representative of the decedent" may "maintain an action" suggests that no one else is a "party." It is true that this court has previously referred to the statutory beneficiaries in a wrongful death case as "real parties in interest," *Christensen v. Epley*, 287 Or 539, 545, 601 P2d 1216 (1979)—a point on which adverse party relies heavily. We also have referred to the personal representative as a "nominal party," meaning that the personal representative serves a technical role in the litigation. *Id.* at 546 ("[A personal representative is] a mere

nominal party having no interest in the case for himself
or the estate he represents. He does not act in his general
capacity as executor or administrator or as representative of
the decedent's estate. Instead he sues as trustee on behalf
of the particular persons designated in the act, even though
the action is brought in his name as executor or administra-
tor."). Relying on the history of amendments to the wrongful
death statute, this court has explained that

> "the present statute provides, in effect, for an action to be
> brought in the name of the personal representative of the
> estate to enforce the individual claims of the [beneficiaries]
> for the pecuniary loss to each of them as a result of the
> death of the decedent and for the loss to each of them of the
> decedent's society, companionship[,] and services."

*Id.* at 546. We went on to conclude that, for purposes of the
damages cap in the Oregon Tort Claims Act, a wrongful death
claim represents multiple claims by multiple claimants—
the beneficiaries, who are "real parties in interest." *Id.* at
548.

        "Real party in interest" is a legal term of art. It
refers to

> "[t]he person to be benefitted by, or entitled to receive
> the benefits of, the suit. More precisely, that person who
> can discharge the claim upon which suit is brought and
> control the action brought to enforce it, usually but not nec-
> essarily the person beneficially interested in the cause of
> action."

*Ballentine's* at 1059; *see also Black's* at 1137 (5th ed 1979)
("Under the traditional test, party is a 'real party in inter-
est' if it has the legal right under the applicable substantive
law to enforce the claim in question.").[4]

        The wrongful death statute provides that only the
personal representative has the authority to maintain the
wrongful death action. *See* ORS 30.020(1). The personal
representative is the person who brings the action, makes
litigation decisions during the proceedings, and has the

_____

[4] The current version of *Black's* describes the phrase similarly: "[a] person
entitled under the substantive law to enforce the right sued on and who generally,
but not necessarily, benefits from the action's final outcome." *Black's* at 1351 (11th
ed 2019).

authority to settle the case. The statutory scheme does not allow statutory beneficiaries "to enforce the right sued on," or to "control the action brought to enforce [the right]," as would be true of a real party in interest.

Thus, although this court, in earlier cases not presenting the legal issue raised here, has referred to the statutory beneficiaries in a wrongful death case as the real parties in interest, the wrongful death statute makes clear that those beneficiaries do not meet every aspect of the definition. The beneficiaries have no authority to make decisions about how the litigation proceeds, when it is filed, or when it is settled. Rather, they are subject to the decisions made by the personal representative. And that is what matters in this case. As we have explained above, the reference to "party" in ORCP 44 C means the person or persons with authority to litigate the case. Statutory beneficiaries do not have that authority. Thus, their status as beneficiaries does not make them parties within the meaning of ORCP 44 C.

C.   *Application*

We have concluded that the "party" for purposes of ORCP 44 C is the person with the authority to control the litigation, and that a person's status as a statutory beneficiary under ORS 30.020 does not make that person a "party," because that status gives the person no authority to control the litigation. Those conclusions do not entirely resolve this case, because the personal representative—decedent's mother—is also one of the beneficiaries. We next consider how ORCP 44 C applies here in light of those dual legal roles.

Relator, as the personal representative, is a "party" who must produce medical records to prove the wrongful death claim. However, by definition, she is a party only in her capacity as the personal representative of decedent. Thus, construing ORCP 44 C and ORS 30.020 together, we conclude that the records she must disclose are the records pertaining to the alleged injury or injuries suffered by the decedent. Records pertaining to any damages that relator suffered in her capacity as a *beneficiary*, and records pertaining solely to medical care that relator received that do not also pertain to the injury suffered by the decedent, are

not records regarding injuries "to the party" within the meaning of ORCP 44 C because relator is not a party in her capacity as a beneficiary.

As explained earlier, some of the disputed requests for production expressly seek the disclosure of medical records pertaining to decedent's medical care, while others expressly seek the disclosure of the beneficiaries' medical records pertaining to their alleged damages for the loss of decedent's society and companionship. A potentially complicating factor is that some of the records in the first category may also be the records of decedent's *mother*'s (relator's) medical care, insofar as RFPs 1-3 encompass her records "relating to the health and development" of decedent, such as ultrasounds and other neonatal or postnatal care. Where records of a personal representative's medical care overlap to some extent with records concerning a decedent's injuries and care, that could raise questions about which records are subject to ORCP 44 C disclosure and which are not. In this case, as we understand the record, that is not an issue that we must address further.[5]

In arguing that the loss of society and companionship is an "injur[y] for which recovery is sought" within the meaning of ORCP 44 C, adverse party points out that previous cases from this court have recognized that a decedent's beneficiaries suffer "injury" as a result of the decedent's death and recover for that injury through the wrongful death action. *See Behurst v. Crown Cork & Seal USA, Inc.*, 346 Or 29, 39, 203 P3d 207 (2009) (explaining that the wrongful death statute provides recovery to "beneficiaries for *their* injuries" (emphasis in original)); *see also Christensen*, 287 Or at 545-46 (explaining that the wrongful

---

[5] Adverse party took the position before the trial court that RFPs 1-3 were not intended to cover any medical information about decedent's mother that did not concern decedent "in the womb." Relator represented to the trial court that she has produced "every extant medical record of the decedent *** from his birth to his death, and after (autopsy)," and relator also produced two categories of her own records (a prenatal ultrasound and postnatal lactation records). We thus understand relator to have taken the position that her own medical records are discoverable under ORCP 44 C to the extent that they concern decedent's alleged injuries. Accordingly, it is not entirely clear to what extent RFPs 1-3 remain the subject of meaningful dispute. Nonetheless, we reiterate that the records that relator must produce are "all written reports and existing notations of any examinations relating to injuries" suffered by decedent. ORCP 44 C.

death statute provides for the personal representative—a nominal party—to "enforce the individual claims" of the statutory beneficiaries).

In some sense, of course, it is true that decedent's parents have experienced injury, for which damages for the loss of decedent's society and companionship are intended to compensate them. This case does not call upon us to consider whether the beneficiaries have a "claim" for "injury" in any context other than the one presented here. The narrow question in this case is whether those alleged damages constitute a "claim * * * for damages *for injuries to the party*," as set out in ORCP 44 C. (Emphasis added.) We understand adverse party to agree that that is the dispositive question. In other words, we do not understand adverse party to contend that, even if the beneficiaries are *not* "parties," they are nonetheless asserting "injuries for which recovery is sought" under ORCP 44 C.[6] Rather, adverse party expressly argued to the trial court that the beneficiaries are "parties to this action," a premise on which it continues to rely.

For reasons we have explained, however, the statutory beneficiaries are not "parties" to a wrongful death action, because the only person with the authority to control the litigation is the personal representative of the decedent. Nor can it be said that, as a class, the statutory beneficiaries are within the custody or control of the personal representative. That point must not be obscured by the fact that, in many cases, all of the beneficiaries may well be people over whom the personal representative exercises control (*e.g.,* the personal representative herself, and minor children). In other cases, however, statutory beneficiaries may include people over whom the personal representative has no control, such as an estranged parent or adult child. ORS 30.020(1) (providing that the beneficiaries to a wrongful death claim

---

[6] Similarly, we do not understand adverse party to argue that the rule's reference to cases where "a claim is made for damages for injuries to the party" could encompass a claim made for damages suffered by the *beneficiaries* as a result of the injury *to decedent*. Such a reading of the phrase would be strained and, more importantly, would provide no benefit in light of the second half of the rule, which requires disclosure of records "relating to *injuries* for which recovery is sought." ORCP 44 C (emphasis added). That is, even if one conceives of the beneficiaries as having incurred "damages," if they have not suffered the "injury" contemplated by the rule, then the disclosure requirement simply does not apply.

include anyone covered by the law of intestate succession, among others).

Adverse party argues that not requiring disclosure of the beneficiaries' privileged medical information in this case will frustrate the policy objective of ORCP 44 C, which is to further the exchange of information relevant to the determination of damages. That policy concern is a reasonable one. As this case illustrates, the language of ORCP 44 C is an awkward fit for a claim of wrongful death, where the party bringing the action is a "nominal" party acting for the benefit of others. It may be that the drafters of ORCP 44 C did not specifically contemplate the wrongful death context and that, had they done so, they would have intended that privileged medical records pertinent to damages for loss of society and companionship should be disclosed, even by those who are not parties. On the other hand, extending the disclosure obligation to the records of nonparties arguably could present significant problems, as noted by an *amicus curiae* filing in this case.[7]

Those competing policy arguments can be reasonably resolved in more than one way. It is not apparent from the record that the drafters of ORCP 44 C intended to weigh or decide them, and it is not for this court to do so in the first instance. Rather, this court must apply the text of the rule as written. For the reasons we have explained, the only way to give effect to the entire text of the rule, as informed by its context and legislative history, is to conclude that statutory beneficiaries are not "parties" within the meaning of ORCP 44 C. Nor are statutory beneficiaries, as a class, under the custody or control of the person who is the party—the personal representative. Accordingly, their loss of decedent's society and companionship is not an injury "to the party or to a person in the custody or under the legal control of

---

[7] In a brief filed in support of relator's petition for writ of mandamus, *amicus curiae* Oregon Trial Lawyers Association (OTLA) argues that applying the rule to nonparties would present practical problems. For one, it is not obvious where the trial court would find the authority to order a nonparty to produce privileged information. In addition, OTLA observes that a more expansive construction of ORCP 44 C could lead to the compelled production of privileged medical information by statutory beneficiaries who were not consulted about the decision to bring the lawsuit and may not wish to be involved—a result that policymakers could reasonably want to avoid.

a party" for purposes of ORCP 44 C. Thus, to the extent the trial court's order requires the beneficiaries to produce privileged information related only to their own care and treatment arising out of decedent's injury and death, that order was in error.[8]

A peremptory writ of mandamus shall issue.

---

[8] Relator also challenges the part of the trial court's order directing that decedent's parents must answer deposition questions about their medical treatment. That order, however, specifically provides that the parents need not disclose privileged communications, and relator has not developed an argument in this mandamus proceeding as to why that portion of the trial court's order was erroneous. We decline to consider it further.